William Gordon BARNES, Administrator of the Estate of Daniel W. Barnes, deceased, Elsie E. Barnes, deceased, Daniel W. Barnes, Jr., deceased, and Sandra M. Barnes, deceased, Appellant,

v.

Frankie Lou SMITH, Ancillary Executrix of the Estate of Houston Smith, Jr., deceased, Appellee.

Bruce G. JOLLY and Susan Ann Jolly, a minor, by Bruce G. Jolly, her father and next friend, Appellants,

v.

Frankie Lou SMITH, Ancillary Executrix of the Estate of Houston Smith, Jr., deceased, Appellee.

Bruce G. JOLLY, Administrator of the Estate of Gloria Jolly, deceased, Appellant,

v.

Frankie Lou SMITH, Executrix of the Estate of Houston Smith, Jr., deceased, Appellee.

Frankie Lou SMITH, Executrix of the Estate of Houston Smith, Jr., deceased, Appellant,

v.

Gerald Wayne BARNES, a minor, by William Gordon Barnes, his brother and next friend, Appellee.

Nos. 6765-6768.

United States Court of Appeals
Tenth Circuit.

June 4, 1962.

William A. Sloan, Albuquerque, N. M.
(Rodey, Dickason, Sloan, Akin & Robb,
Albuquerque, N. M., and William C.
Briggs, Albuquerque, N. M., were with
him on the brief) for Frankie Lou Smith,
Executrix of the Estate of Houston
Smith, Jr., deceased.

A. D. Williams and Glen Houston,
Hobbs, N. M. (Williams, Johnson &
Houston, Hobbs, N. M., and Richard L.
Westlake, Midland, Tex., were with him
on the brief), for William Gordon
Barnes, and others.

Before LEWIS, BREITENSTEIN and
HILL, Circuit Judges.

LEWIS, Circuit Judge.

These four cases, consolidated both for
trial and on appeal as containing com-
mon questions of fact and law, resulted
from a highway disaster involving the
collision of a pick-up truck transporting
a family of eight and a late-model Cadil-

lac containing two men. The accident occurred July 2, 1960, at a point about eight miles east of Tatum, New Mexico, and caused the deaths of both the driver of the Cadillac, Houston Smith, Jr., and the driver of the pick-up, Daniel W. Barnes, and also the death of four passengers in the pick-up, Mrs. Barnes and three of the Barnes' children, Daniel, Jr., Sandra and Gloria. A fourth child, Gerald, suffered massive injuries and the remaining passengers, the son-in-law Bruce G. Jolly (husband of Gloria) and the infant Susan Jolly, suffered severe injuries.

The causes were tried in the United States District Court for the District of New Mexico after removal of Nos. 6765 and 6766 from the New Mexico state court and transfer of Nos. 6767 and 6768 from the United States District Court for the Western District of Texas. Jurisdiction in each case was based upon diversity of citizenship. In each case the executrix of the estate of Houston Smith, Jr., was defendant below.

After trial to a jury verdicts were returned favoring plaintiffs in each instance and judgments upon such verdicts were entered as follows:

In No. 6765:

| | |
|---|---|
| For the death of Daniel W. Barnes | $ 25,000 |
| For the death of Elsie E. Barnes | 20,000 |
| For the death of Daniel W. Barnes, Jr. | 15,000 |
| For the death of Sandra M. Barnes | 15,000 |

In No. 6766:

| | |
|---|---|
| Bruce G. Jolly (injuries and expenses) | 50,000 |
| Susan A. Jolly (injuries and expenses) | 1,000 |

In No. 6767:

| | |
|---|---|
| For the death of Gloria Jolly | 25,000 |

In No. 6768:

| | |
|---|---|
| Gerald W. Barnes (injuries and expenses) | 400,000 |

The plaintiffs appeal from all judgments except those for Bruce G. Jolly and Gerald W. Barnes. The defendant appeals from the judgment in favor of Gerald W. Barnes. Since the latter appeal contains but a single contention, a claim that the judgment is excessive in amount, we give it first attention for it reaches the subject matter of a contention common to the remaining appeals, that is, that those awards are inadequate. The trial court denied new trials after giving the fullest of consideration to the claims of the parties respecting both excessiveness and inadequacy.

Although much has been written and concern voiced over the power and scope of federal appellate review of the allowable amount of jury awards in unliquidated tort claims, 6 Moore's Federal Practice, 59.08(6), it is established by precedent in this circuit,[1] and others, that the trial court's refusal to grant a new trial upon such ground may be reviewed and set aside if an abuse of discretion appears clear. However, absent an award so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate. Snowden v. Matthews, 10 Cir., 160 F.2d 130; Chicago, Rock Island & Pacific Railway Co. v. Kifer, 10 Cir., 216 F.2d 753. Such rule, tempered as it is by legalistic reasoning, is considerably dulled by the fact that in most instances the only guide available upon review to test the properness of an award is a comparison of amount with injury. This comparison must be made but in the case at bar is not the sole standard upon

1. Smith v. Welch, 10 Cir., 189 F.2d 832; Snowden v. Matthews, 10 Cir., 160 F.2d 130; Chicago, Rock Island & Pacific Railway Company v. Kifer, 10 Cir., 216 F.2d 753; E. L. Farmer & Company v. Hooks, 10 Cir., 239 F.2d 547; Franklin v. Shelton, 10 Cir., 250 F.2d 92; Ziegler v. Akin, 10 Cir., 261 F.2d 88.

which the trial judge relied in refusing to set aside the jury's verdicts.

■ The judgment entered in favor of Gerald W. Barnes is for the sum of $400,000. No larger judgment for personal injuries has ever come to the attention of this court. Nor have we had occasion to consider a case where more severe injuries were involved. At the time of the accident Gerald was twelve years old and normal in mental and physical development. He has now been completely destroyed as a human being. Severe and permanent brain injuries have resulted in loss of memory, loss of intellectual functioning, loss of orientation in space and time, difficulty in chewing, swallowing, talking and breathing, partial paralysis and injury to both legs and arms, loss of control over elimination processes, and many other difficulties. He is however aware both of his former normalcy and his present helpless and hopeless condition. The most optimistic prognosis is that he may, with extended therapy, one day regain the mental status of twelve years. It is indeed hard to conceive of a more tragic existence. And it would be unrealistic to deny the inevitable emotional impact that the boy's condition, the sight of him, the total circumstances of the accident must have upon those charged with evaluating the damages.

■ It is not the duty of jurors to set aside, even if it were possible, all the decencies of human emotion when called upon to decide controversy. It *is* the duty of jurors not to allow emotion to overcome fact, not to allow sympathy to overcome reason, not to allow desire for result to overcome justice. The trial court recognized this case as one where complete detachment would be unnatural and natural pity could dominate the course of the trial. The court concluded however that the verdict was the result of conscientious deliberation and the admirable performance of duty. In denying the motions for new trial the court stated:

"The question in every case is what is a just and fair verdict, and that leads me then to think, as I have since this verdict was rendered, what is just compensation in this case. What is fair compensation? I have always had trouble, as I said, in defining that term to a jury, because as a matter of fact, there is no yardstick to measure damages in any individual case, except the sound judgment of the jurors, based upon the evidence being heard. And in this case I think we have an affirmative showing, which is not often the case, that the jury was not excited, it was not prejudiced, and its verdict was not caused by any feeling of passion or anything of that kind. As a matter of fact, throughout the trial of the cases I was greatly concerned that this case, being one which I should say is not included in the cases of 'automobile accident industry' cases—this is a legitimate negligence case and has been all the time, and I was afraid when these awful deaths, bodies strewn about the highway, the little baby found over in a ditch crying, the mother of that child clinging to a total stranger, crying for her baby, holding on to something and I think unconsciously she was holding onto life itself and life escaped her, despite her efforts, and then this little boy with his injuries coming before the jury, their seeing him and having heard the testimony they heard about him, all of those things had impressed me that there was grave danger of a jury getting out of hand and rendering verdicts which would be entirely excessive. Having that fear in mind, I ruled perhaps too closely against the plaintiffs in trying to avoid any prejudice or sympathy or passion guiding the jury in its deliberations * * *."

The affirmative showing, referred to by the trial court in his remarks, that the jury was not led to its verdict by passion or prejudice is premised at least

in part,[2] by the conduct of the jury after the causes were submitted and before verdicts were determined. Specific inquiries were made as to the application of taxes to potential judgments, the possibility of awards in form other than lump sum, the safeguards under state law applicable to administrators and guardians. These inquiries indicated to the trial court that the jury was conscientiously searching for awards in amount sufficient to compensate for damage but no more. We cannot find such interpretation to be clearly erroneous. Nor is there anything in the record to indicate that the jury did not attempt to follow precisely the admonitions of the trial court:

"I want to talk with you just a moment about the injuries to the little boy, Gerald Wayne. You saw him. You heard testimony about his condition, mental condition, what may be expected in the future, all of those things, and pain and suffering, may be considered by you in arriving at what sum you think will justly compensate him for the injuries sustained and also make provisions for medical bills and what may be reasonably expected to be incurred in the future. I said to compensate him, because any award for damages that you make in his case will be for him * * * Of course, the doctors and others have to be paid, and his upkeep and all that, but the award for him is for the young boy himself and you should award him only that sum which you believe from all the evidence in the case, considering the nature and extent of his injuries, pain and suffering, his future, and all of the things about which you have heard testimony, make an award which you think will fairly and justly compensate as nearly as possible for the injuries he has sustained."

The award was justified by the evidence and cannot be said by reason of its amount to demonstrate bias or passion on the part of the jury in arriving at its verdict. And, similarly, we find no cause to upset the verdicts in Nos. 6755, 6766 and 6767 upon claim of inadequacy. The dispassionate attitude of the jury extended to all aspects of their deliberations.

Plaintiffs assert error in the court's instructions on the measure of damages for wrongful death under New Mexico law. The trial court stated:

"You are instructed as to the wrongful death actions that, if you find the issues in favor of the plaintiffs, then you shall assess compensatory damages, and in assessing the compensatory damages you should not take into consideration the mitigating or aggravating circumstances if such you find there to be. In assessing the compensatory damages you may give such damages as you deem fair and just, taking into consideration the pecuniary injury or injuries resulting from such death to the persons entitled to share in the award and taking into consideration the age, earning capacity, health, habits, probable duration of life, and probable and/or possible contributions which the decedents might have made to such persons entitled to share in the award, considering the probable expenditures of the deceased for their own maintenance and personal expenses."

Plaintiffs apparently contend that error in this instruction lies in an emphasis upon the pecuniary value of the life taken to the survivors and in permitting the jury to consider the possible contributions to survivors and the expenditures which must be incurred during a lifetime, as well as the probable income of the deceased. However, instructions to the jury covered plaintiffs' interpretation of Hogsett v. Hanna, 41 N.M. 22, 63 P.2d 540, that damages under the wrongful death act are not merely compensa-

---

2. The trial court was impressed, as is this court, by the remarkable restraint of counsel for all parties during the entire course of the trial.

tory of pecuniary loss to the survivors. The trial court stated:

" * * * However, you must, in determining the personal injury— that is, the actual pecuniary injury, not personal—pecuniary injury to the survivors, you cannot just take exactly what the person was making at the exact time, how much his survivor was receiving at the exact moment of death—might not have been receiving anything as a matter of fact—but you are to determine that from, again from all the evidence in the case, determine the pecuniary injury from a consideration of the deceased persons' ages, life expectancy, habits, character, health, earning power, salary, all those things that go into the question of what may constitute the value of a human life, and you may take the life expectancy, the earnings that would be naturally contemplated, but, of course, you would reduce that in that reasonable amount which you think it should be reduced * * You should not, of course, say that a person's life has no value. Every person's life has some value, and the law presumes it has value and is of some worth to an estate * * * "

Thus the trial court incorporated in its instructions the holding of Hogsett that even in absence of proof of pecuniary loss damages may be awarded, the language of the statute,[3] and the holdings of Mares v. New Mexico Public Service Co., 42 N.M. 473, 82 P.2d 257, 270, and Duncan v. Madrid, 44 N.M. 249, 101 P.2d 382, 388. Obviously, the statute contemplates that lives have differing pecuniary values and that the elements of loss may be considered by the jury in arriving at a compensatory figure. And, of course, pecuniary loss must encompass probable expenditures as well as probable lifetime income. The New Mexico cases sustain this view.

Claim is also made that the court erred in refusing to submit the issue of punitive damages as against the defendant executrix and in refusing to admit in evidence the results of a blood-alcohol test made by a laboratory technician from a blood sample withdrawn from the deceased driver Smith. The questions are in part interlocking since both the evidence and the instruction sought to bring home to the jury aggravating circumstances which would permit the imposition of exemplary damages.

Although there appears no New Mexico case on the particular subject, courts which have considered the problem have been virtually unanimous in holding that punitive damages are not available from the estate of the wrongdoer, since the reason for their imposition can no longer be effective. As stated in Sullivan v. Associated Billposters and Distributors, 2 Cir., 6 F.2d 1000, 1012, 42 A.L.R. 503:

" * * * the measure of damages against the personal representative of a deceased tort-feasor is not always the same as the amount which might have been recovered against the decedent. The general rule is that, while in cases where the cause of action survives the same compensatory damages are recoverable against the personal representative as might have been recovered against the decedent, yet in such cases there is no right to punitive or exemplary damages. * * * "

To the same effect see annotation 65 A. L.R. 1049; 25 C.J.S. Damages § 125; and cases cited therein.

The result of the chemical analysis of the blood sample withdrawn from the deceased driver Smith indicated an alcohol content nearly three times that sufficient under accepted standards to produce drunkenness. The reliability of such test as indicative of condition is, of

3. N.M.S.A.1953, 22–20–3: " * · * * and the jury in every such action may give such damages, compensatory and exemplary, as they shall deem fair and just, taking into consideration the pecuniary injury or injuries resulting from such death to the surviving party or parties entitled to judgment * * *."

course, entirely dependent upon the scientific accuracy of the test. In the case at bar the blood was withdrawn by an embalmer under conditions clearly indicating the probability of lack of chemical purity. Under such circumstances the trial court did not abuse his discretion in rejecting the results of the tests for plaintiffs did not meet the burden of establishing a proper foundation for the proffered evidence.

█ The trial court also excluded expert testimony offered by plaintiffs on the question of compensation for the death of 17-year-old Daniel Barnes, Jr. under the following tender:

"The evidence will show that Dr. Herman P. Miller is a consulting statistician and economist, that he obtained a Bachelor of Science degree in 1942 from the City College of New York and a Master's degree in Economics in 1950 from George Washington University and a Ph.D. in Economics in 1954 from American University in Washington, D. C.; that from 1946 to 1956 he was employed by the Bureau of the Census, U. S. Department of Commerce, as a statistician, and that from 1950 to 1956 he was chief of the Consumer Income Branch and that during the period from 1946 to 1956 he compiled statistics showing the * * * average annual income of males in the United States in certain age groups or at specified age groups for any given age, and that in 1950, 1956, and 1958 he compiled statistics showing the lifetime income of males after they attained the age of 18 years with certain education levels, that he has published numerous articles with relation to income of males of certain education levels, and that his testimony would show that the average lifetime earnings of white males with one to three years education, after they attained their 18th birthday, would be $211,193, and that the average lifetime earnings of males who have graduated from high school, after they attain their 18th birthday, their lifetime earnings would probably be $257,557, and that the probable lifetime earnings of males with six years of elementary school, that their lifetime earnings, after they attain the 18 years of age, would be $169,976."

This evidence was sought to show the probable earning capacity and as an aid to the jury in determining the present worth of the life of Daniel Barnes, Jr. Whether or not the witness is qualified or whether or not the subject is one proper for expert testimony has repeatedly been held to be a matter largely within the trial court's discretion, II, Wigmore on Evidence, § 561; Millers' Nat. Ins. Co., of Chicago, Ill., v. Wichita Flour Mills Co., 10 Cir., 257 F.2d 93, 76 A.L.R. 2d 385, and cases cited therein at p. 100. Considering the nature of the testimony offered and the necessity of calculating future unknowables and broadly applying the general to the specific, the statistical expertise of the witness had little to offer the jury relevant to the pecuniary value of this boy's life. Under such circumstances, abuse of discretion cannot be ascribed to the trial court.

The judgments are severally affirmed.