Barbara Ann ALLEY and W.H.
Alley, Plaintiffs,

v.

GUBSER DEVELOPMENT CO., an Oklahoma corporation; National Gypsum Company, a Delaware corporation d/b/a DMH Company; Weyerhaeuser Company, a Washington corporation; and Louisiana-Pacific Corporation, a Delaware corporation, Defendants.

Civ. A. No. 80–Z–986.

United States District Court,
D. Colorado.

Aug. 10, 1983.

John S. Evangelisti, LaFond & Evangelisti, Denver, Colo., for plaintiffs.

Hugh Q. Gottschalk, Holland & Hart, Denver, Colo., for Gubser Development Co. and National Gypsum Co.

Richard L. Schrepherman, O. Russell Murray, Holme, Roberts & Owen, Denver, Colo., for Weyerhaeuser Co.

Christopher M. Brandt, Wood, Ris & Hames, P.C., Denver, Colo., for Louisiana-Pacific Corp.

## ORDER

WEINSHIENK, District Judge.

Plaintiffs Barbara Ann and William H. Alley, husband and wife, sued the defendants, Gubser Development Company (Gubser), National Gypsum Company (National Gypsum), Weyerhaeuser Company (Weyerhaeuser), and Louisiana-Pacific Corporation (Louisiana-Pacific), for injuries and losses allegedly caused by the manufacture and sale of a mobile home which the plaintiffs purchased and lived in for six months in 1978. Jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332. Plaintiffs relied upon three theories of liability: breach of implied warranty of merchantability, negligent failure to warn and products liability.

The case was tried to a jury of seven, which returned a verdict for plaintiffs and against defendants as follows: $20,000 in compensatory damages for Mrs. Alley; $30,000 in compensatory damages for Mr. Alley; and punitive damages for Mr. Alley against Gubser in the amount of $10,000, against National Gypsum in the amount of $200,000, against Weyerhaeuser in the amount of $150,000, and against Louisiana-Pacific in the amount of $150,000. Judgment was entered on August 31, 1982; a stay of execution of the judgment was granted on September 10, 1982.

The case is now before the Court on the post-trial motions filed by the defendants. These include: (1) Motion for Judgment Notwithstanding the Verdict or in the Alternative for a New Trial, by defendants Gubser and National Gypsum; (2) Defendant Louisiana-Pacific Corporation's Motion to Alter or Amend Judgment or for Judgment Notwithstanding the Verdict or for Remittitur or New Trial; and (3) Motion of Defendant Weyerhaeuser Company for

Judgment Notwithstanding the Verdict on Punitive Damages; or to Alter or Amend Judgment; or, in the Alternative, for Remittitur or a New Trial on All Claims. Memorandum Briefs were filed by each defendant in support of these motions. Plaintiffs filed a Reply to Defendants' Motions to Amend and for New Trial, and all defendants filed reply memoranda. There also have been supplemental memoranda filed by all parties.

The Court has considered all of these motions and memoranda, the relevant case law, and all the facts and circumstances of the case, and now is prepared to rule on the defendants' motions.

The issues raised by defendants fall into two main categories: (1) issues involving compensatory damages, including (a) whether there was sufficient evidence to support the verdicts; and (b) whether the amounts awarded were excessive; and (2) issues involving punitive damages, including (a) whether punitive damages were barred by the statute of limitations found in C.R.S.1973 § 13–80–104; (b) whether exhibits were properly admitted against defendants Weyerhaeuser and Louisiana-Pacific; (c) whether there was sufficient evidence to support an award of punitive damages; and (d) whether the award of punitive damages was excessive.

## I. Compensatory Damages

Defendants argue that there was insufficient evidence to support the award of compensatory damages to plaintiffs, urging that there was no showing that their products off-gassed urea formaldehyde, nor that there was any causal connection between the presence of urea formaldehyde and the injuries suffered by the plaintiffs. More specifically, they point out that the elements of permanent injury, loss of credit, loss of reputation and impairment of earning capacity were all removed from the case. They further urge that because the evidence indicated that the plaintiffs' bankruptcy and anxiety were caused by facts other than the presence of urea formaldehyde in the mobile home, and because the evidence relating to the liver attack of Mr.

Alley was supported only by the testimony of James R. Beall, Ph.D., the resulting verdicts were both unsupported by the evidence and excessive.

In addition, Louisiana-Pacific argues that the evidence tying it to the manufacture of the particleboard was insufficient because the number on the piece of particleboard taken from the plaintiffs' home, Exhibit 102, was illegible; the testimony of Ron King was improperly admitted; and Exhibit 154, which indicated that the defendant used mill number "42," was also improperly admitted.

The Tenth Circuit has set down guidelines for determining whether an award by a jury of either compensatory or punitive damages can be set aside:

We have said that absent an award so excessive as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the damages is considered inviolate. *Metcalfe v. Atchison, Topeka and Santa Fe Railway Co.,* 491 F.2d 892, 898 (10th Cir.) ... Such bias, prejudice, or passion can be inferred from excessiveness. *Wells v. Colorado College,* 478 F.2d 158, 162 (10th Cir.). ... However, a verdict will not be set aside on this basis unless it is so plainly excessive as to suggest that it was the product of such passion or prejudice on the part of the jury. ...

Such cases recognize the principle that if the court determines that the verdict was the result of passion or prejudice, or for any other reason it appears that the jury erred or abused its discretion not only on the issue of damages but also on the issue of liability, the court must unconditionally order a new trial and cannot give the plaintiff the option to accept a lesser amount. ...

However, another remedy is also recognized. Where the court concludes there was error only in an excessive damage award, but not one also tainting the finding of liability, the appellate court may order a remittitur and alternatively di-

rect a new trial if the plaintiff refuses to accept the remittitur, a widely recognized remedy. *See Holmes v. Wack,* 464 F.2d 86, 89 and n. 3 (10th Cir.). . . .

*Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 703 F.2d 1152 at 1168 (10th Cir.1981) sustained on rehearing en banc, March 31, 1983. (Footnote and citations omitted).

 Although plaintiffs' presentation on liability issues was based primarily on circumstantial evidence and inference, there was sufficient evidence to support a finding that there was urea formaldehyde in plaintiffs' home and that it did cause injury to the plaintiffs. The jury so found. This Court does not conclude that the compensatory damage awards are so excessive as to shock the judicial conscience, and, thus, will not substitute her judgment for that of the jury. *See Burns v. McGraw-Hill Broadcasting,* 659 P.2d 1351, 1355–6 (Colo.1983). The awards of compensatory damages will not be disturbed. The admissibility of the testimony of Mr. King and of Exhibit 154 were reviewed at trial, and the Court finds that both were properly considered by the jury.

Defendants' motions for judgment notwithstanding the verdict or for an altered or amended judgment or for remittitur will therefore be denied as to compensatory damages.

## II. Punitive Damages

### A. Statute of Limitations

 All defendants argue that allowing punitive damages to be considered by the jury was error because this is an action involving a penalty, and punitive damages are therefore barred by the one year statute of limitations provided in C.R.S.1973 § 13–80–104. The Court's earlier holding that the claim for punitive damages is not barred by this statute of limitations is correct. The plaintiffs' claim is based on the underlying tort claim, and is not just a suit for penalty under § 13–80–104. *See Dorney v. Harris,* 482 F.Supp. 323, 325 (D.Colo. 1980), and *Griffin v. Pate,* 644 P.2d 51, 53 (Colo.App.1981).

### B. Admissibility of Exhibits

 1. Weyerhaeuser: Defendant Weyerhaeuser argues that the Court erred in admitting Exhibits 266, 302, 320, 331, and 352, all of which relate to the issue of whether punitive damages should be allowed against this defendant. The Court carefully considered the question of the admissibility of these documents at trial. The documents were properly admitted as statements against interest, and will remain as a part of the record.

2. Louisiana-Pacific: Defendant Louisiana-Pacific objects to the admission of Exhibit 154 on the ground that it was not listed in the Pre-Trial Order, and was therefore wrongfully admitted into evidence. Defendant argues that, without this exhibit, there is no evidence tying Louisiana-Pacific to the manufacture of the particleboard. Defendant also objects to the admission of Exhibits 155, 157, 163 and 187 on the ground that they do not fall within an exception to the hearsay rule. These issues were considered at length at the Pretrial Conference on August 8, 1982, at which time the Court decided that the documents were admissible. The documents will remain as a part of the record.

### C. Sufficiency of the Evidence

 Defendants argue that before a corporation can be held liable for punitive damages, it must be shown that the corporate management authorized or approved the culpable conduct or participated in the wrong. This is a correct statement of the law in Colorado. *See Malandris,* supra, at 1174.

 Weyerhaeuser argues that there was no evidence that management was aware of the harmful characteristics of urea formaldehyde, or that people named in disputed Exhibits 266, 302, 331 and 352 were part of Weyerhaeuser's management. Gubser, National Gypsum and Louisiana-Pacific also argue that there is no evidence that the management of the three corporations were aware of or participated in the conduct which caused the plaintiffs' injury.

However, the Court concludes, as a matter of law, that there was sufficient evidence to create an inference that management personnel of each defendant corporations knew of the potential problems caused by exposure to urea formaldehyde. Testimony of Bill Watkins, an employee of Gubser, revealed that the doors of the newly manufactured mobile homes had to be tied open in order to keep the formaldehyde odor from permeating the home. The disputed exhibits listed above and offered against Weyerhaeuser are sufficient to create an inference that management employees of the corporation were aware of the urea formaldehyde problem. Exhibits 136 and 137, offered against National Gypsum, and Exhibits 157 and 163, offered against Louisiana-Pacific, are also sufficient to create such an inference.

The award of punitive damages will not be disturbed on the grounds that the corporate management of defendants did not know of or participate in the wrongful conduct.

### D. The Excessiveness of the Punitive Damages

Defendants also argue that the award of punitive damages was grossly excessive, that it was not related to the award of compensatory damages, that it shocks the conscience, and that it was the result of passion and prejudice on the part of the jury.

■ The purpose of punitive damages is to punish the wrongdoer and to deter similar conduct in the future and by others. *Frick v. Abell*, 602 P.2d 852, 853–4 (Colo. 1979). Several factors must be taken into consideration in determining whether an award of punitive damages is excessive: (1) whether it bears some reasonable relation to the actual damages awarded; (2) the degree of malice involved; (3) the gravity of the plaintiff's injury; (4) the desire for meaningful punishment. *Taylor v. Sandoval*, 442 F.Supp. 491 (D.Colo.1977). The Court in *Taylor* found that there is no precise mathematical ratio for determining the reasonableness of the punitive damage

award. However, it has been held in the Tenth Circuit that an award of punitives can be "[s]o extremely disproportional that we must assume that the jury acted either with passion or prejudice...." *Dearmore v. Gold*, 400 F.2d 887, 888 (10th Cir.1968). In the *Dearmore* case, a ratio of punitive to compensatory damages of 11:1 was struck down as being excessive.

■ The award of punitive damages to Mr. Alley was $510,000. Mr. Alley was found to have suffered $30,000 in actual damages, and Mrs. Alley, $20,000. The ratio of punitive to compensatory damages for Mr. Alley is 17:1. Even if the compensatory awards are combined, the ratio of punitive to actual damages is greater than 10:1.

This Court finds this to be a disproportion that is "so excessive ... as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice ... or other improper cause invaded the trial." *See Barnes v. Smith*, 305 F.2d 226, 228 (10th Cir.1962). *See also Malandris*, supra, at 1168.

In so finding, the Court has considered the many factors set out by the Colorado courts as they apply to this case: the extent of the plaintiffs' harm was not so great as to merit an extremely high punitive award; the award of punitives was not reasonably related to the compensatory damages; the plaintiffs did not prove a high degree of malice on the part of the defendants.

The punitive damage award will therefore be reduced, in order to effect a more reasonable relationship between the compensatory and punitive damage awards and yet not defeat the purpose behind the punitive awards. The defendants must still be made to feel the "sting" of the jury's finding that they acted with a wanton and reckless disregard of the plaintiffs' rights and feelings. The punitive award must retain its deterrent effect.

Although the Court finds that the punitive award was excessive and unreasonable in view of the evidence and the injuries sustained by the plaintiffs, thereby infer-

ring that the punitive award was the result of a passion or prejudice on the part of the jury, the Court finds that the liability determination was not similarly tainted. *See Malandris,* supra, at 1168. Had the entire trial been so tainted, the Court would have no choice but to order a new trial. Under the circumstances here, however, the Court will order a remittitur, conditioned on the plaintiffs' acceptance of the reduced punitive damages award. If the plaintiffs choose to reject the remittitur, the Court will grant the defendants' motions for a new trial. *See Holmes v. Wack,* 464 F.2d 86, 89 (10th Cir.1972).

A remittitur of the punitive award to a total amount that is three times the combined compensatory awards given to the plaintiffs, $150,000, will therefore be ordered. This amount will be apportioned based on the original punitive damages awards, as follows:

| | |
|---|---|
| National Gypsum | $58,800 |
| Weyerhaeuser | $44,150 |
| Louisiana Pacific | $44,150 |
| Gubser Development | $ 2,900 |

Plaintiffs will have 20 days from the date of this Order in which to accept or reject the remittitur. If they choose to reject the remittitur, a new trial will be ordered on all issues, because a trial on the issue of punitive damages alone would create undue confusion. *See Malandris,* supra, at 1178.

### III. Statute of Limitation Issue

Defendant Louisiana-Pacific again raises the issue of whether the plaintiffs' claims against the company were barred by the three year statute of limitations provided in C.R.S.1973 § 13–80–127.5. The defendant has raised this issue several times before. The Court will once again deny the defendant's motion, and hereby incorporates by reference, as if fully set forth, the oral conclusions of law previously made.

It is, therefore, ORDERED that all defendants' motions are denied except to the

extent that a remittitur is ordered as set forth above. If plaintiffs reject the remittitur, the motions for new trial on all issues will be granted. It is

FURTHER ORDERED that the plaintiffs shall notify the Court of the acceptance or rejection of the remittitur by August 30, 1983.