761 P.2d 446

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent–Appellant,**

v.

**Paula Jo MAIDMENT, as Next Friend and Guardian of Edward Maidment, a minor, Applicant–Appellee.**

**No. 10336.**

Court of Appeals of New Mexico.

June 30, 1988.

Certiorari Denied Aug. 2, 1988.

Robert E. Sabin, R. Tracy Sprouls, Atwood, Malone, Mann & Turner, P.A., Roswell, for respondent-appellant.

Charles C. Currier, Hunt & Currier, Thomas E. Lilley, Roswell, for applicant-appellee.

## OPINION

BIVINS, Judge.

In *Stewart v. State Farm Mutual Automobile Insurance Co.*, 104 N.M. 744, 726 P.2d 1374 (1986), the supreme court held that under New Mexico's uninsured motorist law, an insured may recover punitive damages from his insurer if he would be legally entitled to recover them from the uninsured motorist. The case before us raises the question of whether an insured can recover punitive damages from his insurer when the uninsured motorist dies before an award is made. We hold he cannot since he would not be legally entitled to recover those damages from the estate of the uninsured motorist.

State Farm appeals an award of punitive damages in an uninsured motorist claim. The underlying cause of action arose out of a collision between a motorcycle driven by Edward Maidment, a minor, and an automobile driven by John Swelling. Swelling, an uninsured motorist, died before the claim was submitted to arbitration. After a hearing, the arbitrators awarded applicant $175,000 in compensatory damages, and recommended that the district court award $25,000 in punitive damages.

Applicant applied to the district court for confirmation of the arbitrators' award, and State Farm moved to correct or modify the award to the extent it recommended punitive damages. *See* NMSA 1978, §§ 44-7-11 and -13. The district court denied State Farm's motion, accepted the arbitrators' recommendation as to punitive damages, and entered judgment for $175,000 compensatory damages, $25,000 punitive damages, and interest. State Farm paid the compensatory damages with interest, and appeals only from that portion of the judgment awarding punitive damages with interest thereon. We reverse.

■ Before discussing the substantive issue, we dispose of a jurisdictional question and a procedural matter raised by applicant in her brief. She argues, first, that, under SCRA 1986, 12-102(A)(1), this court does not have jurisdiction of this appeal because the controversy arises out of an insurance contract and requires the interpretation of the rights and obligations of the parties to that contract. We disagree.

This appeal is from a judgment of the district court confirming the arbitrators' award pursuant to Section 44-7-11. The appeal shall be taken in the manner as

from judgments in civil actions. NMSA 1978, § 44–7–19.

Although it is established that the obligations of an insurer are determined by application of contract law principles to the particular terms of an insurance policy, *March v. Mountain States Mut. Cas. Co.*, 101 N.M. 689, 687 P.2d 1040 (1984), this court has determined that it has jurisdiction over uninsured motorist claims against an insurer where the insurer's liability is contingent upon the tort liability of the uninsured motorist. *Sandoval v. Valdez*, 91 N.M. 705, 580 P.2d 131 (Ct.App.1978) (construing former statute); *see also Chacon v. Mountain States Mut. Cas. Co.*, 82 N.M. 54, 475 P.2d 320 (1970), *transferred to* 82 N.M. 602, 485 P.2d 358 (Ct.App.1971) (supreme court transfers uninsured motorist claim of bad faith of insurer to court of appeals as it sounds in tort).

State Farm's contention that its liability for payment of punitive damages is contingent upon the tort liability of the uninsured motorist is supported by the language of New Mexico's uninsured motorist coverage statutes, NMSA 1978, §§ 66–5–301 to –303 (Repl.Pamp.1984), and case law interpreting the statutes. Section 66–5–301(A) requires, in relevant part, that uninsured motorist coverage be provided "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles * * *." In *Stewart v. State Farm Mutual Automobile Insurance Co.*, the supreme court examined this language and held that, under the uninsured motorist coverage statutes, an insured may recover punitive damages from an insurer if he would be legally entitled to recover them from the uninsured tort-feasor. Therefore, we hold this court has jurisdiction to entertain this appeal.

■ Second, applicant contends this appeal must fail because State Farm never offered into evidence either a copy of the contract of insurance or any proof of the death of the uninsured motorist. We, likewise, reject these claims. State Farm does not rely on the contract of insurance to limit recovery for punitive damages. In fact, at arbitration, it stipulated as to coverage. In denying liability for punitive damages, State Farm relies on the uninsured motorist coverage statutes and traditional concepts of tort law. Applicant seems to imply that the language of the contract provides for payment of punitive damages regardless of whether the insured would be legally entitled to recover them from the uninsured motorist. If that is the case, the burden of producing the contracts was on applicant, not State Farm.

■ With regard to applicant's contention that the record contains no proof of death, we note that State Farm's docketing statement contains a factual recitation that "[o]n March 12, 1987, Mr. Swelling died." Applicant did not challenge this factual allegation. As a general rule, unchallenged factual allegations in a docketing statement of a case that has been assigned to a legal calendar are accepted as the facts in the case. *State v. Calanche*, 91 N.M. 390, 574 P.2d 1018 (Ct.App.1978). This case was assigned to the legal calendar. In any event, the record and transcript of proceedings have nonetheless been forwarded to this court. Although these documents contain no proof of death other than an unanswered allegation in State Farm's motion to modify and statements by counsel for State Farm at oral argument, they do indicate that Swelling's death was never disputed. Moreover, the arbitrators' affidavits, contained in the supplemental transcript, show that an offer of proof of death was made during the arbitration proceedings and that counsel for applicant, as well as all of the arbitrators, agreed that no such proof was necessary. Additionally, the supplemental transcript contains a letter from the district judge to the parties' respective counsel, which reveals that Swelling's death was accepted as a fact. The record, transcript, and supplemental transcript demonstrate that the fact of Swelling's death was indeed an undisputed fact of the case presented to both the district court and the arbitrators. *Cf. id.* We turn now to the critical issue: whether the uninsured motorist's death precludes an award of punitive damages.

The arbitrators found that "the actions and conduct of John Swelling were grossly negligent or reckless so as to justify the award of punitive damages * * *." State Farm does not contest this determination. It contends that because punitive damages cannot be awarded against the estate of a deceased tort-feasor, an insured cannot recover them from his insurer under uninsured motorist coverage.

Although New Mexico has not addressed the question, the vast majority of jurisdictions hold that punitive damages cannot be recovered from the estate of a deceased tort-feasor. *See* Annotation, *Claim for Punitive Damages in Tort Action as Surviving Death of Tortfeasor or Person Wronged*, 30 A.L.R.4th 707 (1984). The Tenth Circuit Court of Appeals, predicting New Mexico law, adopted the majority view in holding that punitive damages are not available from the estate of a wrongdoer. *Barnes v. Smith*, 305 F.2d 226 (10th Cir. 1962). The rationale underlying the majority position is that since the tort-feasor is dead, the primary purpose for imposition of punitive damages, punishment, can no longer be accomplished. Thus, no reason exists to impose punitive damages. *See also* 4 Restatement (Second) of Torts § 908, comment a (1979); 3 L. Frumer & M. Friedman, *Personal Injury, Damages* § 2.02[1] (1984); 5 M. Minzer, J. Nates, C. Kimball, D. Axelrod, *Damages in Tort Actions* § 40.52 (1987).

New Mexico has long recognized that punitive damages are assessed to punish the tort-feasor and not to compensate for loss by a plaintiff. *Stewart v. Potter*, 44 N.M. 460, 104 P.2d 736 (1940). This principle has been consistently followed by the courts of this state. *See, e.g., Bank of N.M. v. Rice*, 78 N.M. 170, 429 P.2d 368 (1967), *appeal after remand*, 79 N.M. 115, 440 P.2d 790 (1968); *Sanchez v. Dale Bellamah Homes of N.M., Inc.*, 76 N.M. 526, 417 P.2d 25 (1966); *Gonzales v. Sansoy*, 103 N.M. 127, 703 P.2d 904 (Ct.App.1984); *Christman v. Voyer*, 92 N.M. 772, 595 P.2d 410 (Ct.App.1979). Significantly, this principle was reaffirmed recently by the supreme court in *Stewart v. State Farm Mutual Automobile Insurance Co.*

Applicant reminds us that while punishment of the tort-feasor may be the primary purpose in awarding punitive damages, this state also recognizes deterrence to others as a legitimate goal. *See Gonzales v. Sansoy*. The deterrent effect of punitive damages on others, however, is inextricably tied to the punishment of the tort-feasor. If the tort-feasor cannot be punished, it follows that there can be no general deterrence. The Florida Supreme Court, in a case decided earlier this year, joined the majority by holding that punitive damages may not be awarded against the estate of a deceased tort-feasor. *Lohr v. Byrd*, 522 So.2d 845 (Fla.1988). The Florida Supreme Court said the decedent's innocent heirs should not be punished when the wrongdoer is unavailable because of death. It quoted with approval the statement of the Fifth District Court of Appeal of Florida, which had certified the question, that:

> The punishment actually is inflicted upon his heirs. Separation of the "punitive" and "exemplary" aspects of such awards is unjustified because general deterrence logically depends upon the perception of punishment suffered by the wrongdoer. *When that punishment is diffused and unjustly inflicted upon the innocent, through a doctrine analogous to attainder, the deterrent effect is frustrated.* It is unrealistic to suppose that such awards deter other prospective tort-feasors, especially if the criminal laws fail to do so.

*Id.*, 522 So.2d at 846 (quoting *Byrd v. Lohr*, 488 So.2d 138, 139 (Fla.App. 5th Dist.1986) (emphasis by Florida Supreme Court)).

■ We agree and join the majority by holding that punitive damages may not be awarded against the estate of a deceased tort-feasor. Our inquiry does not end because, in this case, it is the uninsured motorist carrier that will be responsible for those damages, at least initially, not the deceased uninsured motorist's estate. *See Stewart v. State Farm Mut. Auto. Ins. Co.* (insurance company's payment of punitive damages to its insured does not preclude its recovery from the tort-feasor).

Applicant argues that even if this court adopts the majority view as to the recovery of punitive damages against the estate of a deceased tort-feasor, she is still entitled to recover those damages under her contract with State Farm. Applicant maintains that "[o]nce it is established that the other driver is at fault and is uninsured, the insured becomes entitled to benefits under the contract." She also asserts that her entitlement vests at the moment of impact, implying that the death or identity of the other driver is not relevant as long as she can establish he was uninsured.

Applicant relies in part on this court's decision in *Gantt v. L & G Air Conditioning*, 101 N.M. 208, 680 P.2d 348 (Ct.App. 1983), where we held that payments made pursuant to uninsured motorists' coverage to a worker did not bar his claim for worker's compensation under a provision of the Workmen's Compensation Act that precludes double recovery. *See* NMSA 1978, § 52-1-56(C). We rejected the insurance company's argument in that case that recovery under the uninsured motorist statutes is analogous to recovery from a third-party tort-feasor's liability insurance carrier. In doing so, we said in *Gantt* that once the injured insured establishes that he is "legally entitled to recover damages from the uninsured motorist, * * * the payment received under the coverage is what is provided in the contract." *Id.* at 213, 680 P.2d at 353. We found this more analogous to receipt of payments under the medical payment provisions of an insured's motor vehicle liability insurance or under health insurance.

*Gantt* does not eliminate the requirement that the injured party establish that he is legally entitled to recover damages from the uninsured motorist; it expressly requires it as a condition to payment under the uninsured motorist coverage. As the supreme court noted in *Stewart v. State Farm:* "In *Gantt*, the court correctly observed that the only condition to protection under the provision is that 'the injured person must be legally entitled to recover damages from the uninsured motorist.' " *Id.*, 104 N.M. at 746, 726 P.2d at 1376. In *Gantt*, the worker's right to recover dam-

ages from the uninsured motorist was not in dispute. In the case before us, the right to recovery, at least as to punitive damages, is dependent upon the survival of the uninsured motorist.

Uninsured motorist coverage is mandatory in New Mexico for "the protection of persons insured thereunder *who are legally entitled to recover damages* from owners or operators of uninsured motor vehicles * * *." § 66-5-301 (emphasis added). The legislative purpose of this law is to place the insured in the same position as to the recovery of damages that he would have been in had the tort-feasor had liability insurance. *Wood v. Millers Nat'l Ins. Co.*, 96 N.M. 525, 632 P.2d 1163 (1981); *Gantt v. L & G Air Conditioning.*

The phrase "legally entitled to recover damages" requires that the injured person prove the elements necessary to establish an action in negligence: duty, breach, proximate cause, and loss or damages. *Lopez v. Maez*, 98 N.M. 625, 651 P.2d 1269 (1982). This does not mean the insured has to bring a direct action against the uninsured motorist before making a claim under the coverage; it merely requires that the determination of liability be made by legal means. *Wood v. Millers Nat'l Ins. Co.* Arbitration provides a legal means of establishing the right to recovery. *See id.*

It has been held that in resisting an uninsured motorist claim, the insurer would have available to it, in addition to policy defenses compatible with the statute, the substantive defenses that would have been available to the uninsured motorist. *Winner v. Ratzlaff*, 211 Kan. 59, 505 P.2d 606, 73 A.L.R.3d 623 (1973). At oral argument, applicant conceded that the uninsured motorist carrier could assert, in defense of a claim, the traditional defenses, such as time limitations and comparative negligence. Her counsel indicated that only bankruptcy and identity could not be raised as a bar to recovery.

Construing the phrase in question, the Kansas Supreme Court, in *Winner v. Ratzlaff*, said:

We construe the words "legally entitled to recover as damages" to mean simply that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to the damages and to prove the extent of those damages. This would mean that in a direct action against the insurer the insured has the burden of proving that the other motorist was uninsured, that the other motorist is legally liable for damage to the insured, and the amount of this liability. In resisting the claim the insurer would have available to it, in addition to policy defenses compatible with the statute, the substantive defenses that would have been available to the uninsured motorist such as contributory negligence, etc. (see "Uninsured Motorist Coverage", Robert T. Cox, 34 Mo.L.Rev. 1, 34).

*Id.* at 63, 505 P.2d at 610, 73 A.L.R.3d at 629.

This view appears to have been adopted in other jurisdictions. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Crockett,* 103 Cal.App.3d 652, 163 Cal.Rptr. 206 (1980) (no uninsured motorist recovery where Hawaii no-fault insurance scheme barred recovery against tort-feasor); *Hopkins v. Auto-Owners Ins. Co.,* 41 Mich.App. 635, 200 N.W.2d 784 (1972) (no uninsured motorist recovery where worker's compensation statute abolished tort recovery against fellow-employee tort-feasor); *Byrn v. American Universal Ins. Co.,* 548 S.W.2d 186 (Mo.App.1977) (no uninsured motorist recovery where guest statute barred recovery against tort-feasor). 12A *Couch on Insurance 2d* § 45:644 at 180–181 (M. Rhodes, rev. ed. 1981) states:

An insurer may assert as defenses to a claim under uninsured motorist coverage the nonnegligence of the uninsured, the contributory negligence of the insured, and the lack of damage to the insured, but it does not succeed to the right of the uninsured motorist to interpose the procedural ·defense of the statute of limitations. [Footnotes omitted.]

*See Booth v. Fireman's Fund Ins. Co.,* 253 La. 521, 218 So.2d 580, 28 A.L.R.3d 573 (1968) (one-year statute of limitations for personal injury not a bar to recovery under uninsured motorist coverage). *Cf. Sandoval v. Valdez* (holding one-year statute of limitations in uninsured motorist policy did not bar action against insurer brought beyond one-year but within time allowed for personal injury action; court declined to decide whether that provision or longer statute of limitations for contracts applied).

Consistent with the view expressed in 12A *Couch on Insurance 2d, supra,* some states have rejected other defenses as a bar to recovery under the uninsured motorist coverage. In *State Farm Automobile Insurance Co. v. Baldwin,* 470 So.2d 1230, 55 A.L.R.4th 797 (Ala.1985), while adopting language similar to that quoted above from *Winner v. Ratzlaff,* the court held that sovereign immunity did not constitute a bar to recovery under uninsured motorist coverage. *See also Gremillion v. State Farm Mut. Auto. Ins. Co.,* 302 So.2d 712 (La.App. 1974) (interspousal immunity of tort-feasor not a bar to recovery under uninsured motorist coverage).

We express no opinion as to whether an insurer may raise procedural defenses. Nor do we address the issue of whether substantive defenses that are incompatible with the statute may be raised. Those questions are not before us. Allowing the insurer to raise substantive defenses that are compatible with the statute accords with the approach taken by our courts to preserve, as well as develop, the traditional notions of tort law. *See, e.g., Lopez v. Maez* (tort liability imposed upon tavern-keepers who serve obviously intoxicated persons); *Claymore v. City of Albuquerque, aff'd sub nom., Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981) (pure comparative negligence standard adopted); *Vigil v. Arzola,* 102 N.M. 682, 699 P.2d 613 (Ct.App. 1983), *rev'd on other grounds,* 101 N.M. 687, 687 P.2d 1038 (1984) (cause of action for wrongful discharge recognized). To depart from that approach could cause practical problems in resolving uninsured motorist claims. If the insured had only to establish the uninsured motorist's fault together with damages, *see Gremillion v. State Farm Mut. Auto. Ins. Co.,* it takes no crystal ball to predict the difficulties the

**574**

courts might encounter. For example, would the insured's damages be reduced under comparative negligence? Would the concepts of sudden emergency and act of God be available? We discern no reason why a defense to a punitive damage claim should not be available to the insurer if it is available to the uninsured motorist.

We hold, therefore, that the insurer may assert the death of the uninsured motorist as a bar to recovery of punitive damages. To hold otherwise would undermine the rationale of *Stewart v. State Farm.* The supreme court said in that case that its decision (allowing recovery of punitive damages to the insured if he would be legally entitled to recover them from the uninsured motorist) does not subvert the policy underlying the award of punitive damages, i.e., to punish the tort-feasor. The high court said that the payment of punitive damages would not preclude the insurer's recovery from the tort-feasor, it merely shifts the burden of filing suit for the payment of punitive damages from the insured to the insurer. Because there can be no recovery for punitive damages against the estate of a tort-feasor, the policy would be subverted. The result we reach is compatible with the rationale of *Stewart v. State Farm.* It also comports with the policy of placing the insured in the same position that he would have been in had the tort-feasor had liability insurance. Based on our holding that there can be no recovery of punitive damages against the estate of a tort-feasor who dies before the punitive damages are awarded, it is clear applicant would have no claim for those damages. *See Hopkins v. Auto–Owners Ins. Co.*

We reverse and remand with directions to delete from the judgment the award of punitive damages with interest. No costs are awarded.

IT IS SO ORDERED.

DONNELLY, C.J., and FRUMAN, J., concur.