The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a corporation, Plaintiff,

v.

HADLEY AUTO TRANSPORT, a corporation, and Jacob L. Koenig, Defendants.

Civ. A. No. 6945.

United States District Court
D. Colorado.
April 18, 1963.

Grant, Shafroth, Toll & McHendrie, Peter J. Crouse, Denver, Colo., for plaintiff.

Burnett, Watson & Horan, William P. Horan, Denver, Colo., for defendant Hadley Auto Transport.

Jacob L. Koenig; Louis J. Stuart, Pueblo, Colo., for defendant, Jacob L. Koenig, on his Counterclaim.

DOYLE, District Judge.

This case was tried to a jury on March 4, 5, 6, 7, 8 and 11, 1963. A verdict was returned in favor of the defendant Jacob L. Koenig on his counterclaim in the amount of $31,112.54. Thereafter, the plaintiff filed its motion for new trial assigning various grounds, all of which have been argued and are now submitted for decision.

The one point which has merit and which requires attention is "that the damages assessed are excessive and against the weight of the evidence." The remaining assignments have been carefully considered and are now held to be without merit.

The defendant, Jacob L. Koenig's damages arise from both personal injuries and property damage resulting from a collision between the auto transport which he was driving and a truck of the plaintiff. This occurred on Highway 50 between the towns of La Junta and Las Animas, Colorado. The truck of the Santa Fe had been proceeding in an easterly direction and was preparing to turn to the left into a side road near the railroad right-of-way. The truck contained a work crew which was being transported to the right-of-way. The defendant was also proceeding in an easterly direction and had started to pass the Santa Fe vehicle when it commenced its turn. Koenig tried to turn back to the right side of the highway but was unable to manipulate the equipment so as to avoid collision. He struck the Santa Fe vehicle on its left side, turned it over, seriously injuring several of the persons who were being transported and killing one of them.

The questions of responsibility for the collision have been determined by the jury and on evidence which was highly disputed. The sole matter remaining is whether the proportions of the verdict indicate that the jury abused its discretion in awarding $31,112.54.

*First*, as to the property damages:

The total demand of $21,112.54 for property damage was awarded. The automobile transport was damaged beyond repair and after having been transported to California, the home of Koenig, was sold for $500.00, its salvage value. Therefore, the proper measure of property damage was the reasonable market

value of this vehicle just prior to the collision, less the salvage price. The only evidence offered on behalf of the defendant was his own opinion. He testified as to original cost and it appears that he had invested $17,500.00 in the vehicle. In his opinion it had a reasonable market value of $17,500.00. This was not supported by any information or knowledge showing actual sales or real market prices. The plaintiff, on the other hand, offered testimony by an expert who placed a value of from $5,500.00 to $6,000.00 on it. This expert testified that at the time in question automobile transports had little market value due to the fact that the railroads were then transporting automobiles "piggy back" in specially-made flat cars and that this factor had seriously affected the transport market. He testified that this tractor had a reasonable market value at the time in question of $5,500.00 to $6,000.00 taking into account that it was specially equipped to carry more vehicles than the ordinary transport. Inasmuch as the jury apparently accepted Koenig's opinion, it is impossible to sustain the award in the amount fixed by him.

The evidence in support of the remainder of the property damage award, that to support loss of use, was also unsatisfactory. Documents purporting to show the gross receipts from the transportation of automobiles for a four-month period were offered and received. Koenig testified that his over-the-road expenses were ten cents per mile, an incredibly low amount, but he also failed to furnish any satisfactory evidence as to the number of miles which had been driven so that this factor was left to inference and deduction.

There were in addition some relatively small items (Transportation of the tractor and trailer to California, and telephone calls, the total of which was approximately $500.00).

Thus, Koenig seeks to support the $3500.00 award for loss of use on the basis that he could have netted $153.00 per day had the collision not occurred. He maintains that he is entitled to a total of ninety days during which he was theoretically unable to use the damaged equipment, and that forty-eight of the ninety-day total is attributable to loss of use (that the first forty-two are chargeable to personal injury). Granting that he suffered a loss, the evidence offered to show this loss was little more than suggestive and was less than convincing.

*Second*, as to the personal injury damages:

Here the demand was in the amount of $10,000.00 and the award was in the same amount.

The total medical expenses were in the amount of $300.00. He claimed $153.00 per day (based on gross earnings of the tractor drawn by him for a period of forty-two days of disability). This is based on the gross earnings statement of the tractor, less the per-mile cost. He contends that he is entitled to $3,274.00 pain and suffering.

Undoubtedly, Koenig received severe bruises, but according to the evidence he remained at the scene to supervise the taking of photographs immediately after the collision. After spending one day in the hospital and following the giving of testimony at the coroner's inquest, he returned to his home in California. Although he now complains that his "knee locks" and that he has headaches, he did not offer the testimony of *any* physician in regard to his physical condition at the time of the collision or since that time. It must be concluded, therefore, that the evidence to support the award of $10,000.00 for personal injuries is sketchy.

*Third*, the applicable law:

A definitive decision considering the scope, extent and power of federal courts to grant new trials is found in Aetna Casualty & Surety Co. v. Yeatts, 122 F. 2d 350 (4 Cir., 1941). There, in an opinion by Judge Parker, it was said (at page 354 of 122 F.2d):

"To the federal trial judge, the law gives ample power to see that justice is done in causes pending before him; and the responsibility attendant upon such power is his in

full measure. While according due respect to the findings of the jury, he should not hesitate to set aside their verdict and grant a new trial in any case where the ends of justice so require.

"The distinction between the rules to be followed in granting a new trial and directing a verdict were stated by us with some care in Garrison v. United States, 4 Cir., 62 F. 2d 41, 42, from which we quoted with approval in the later case of Roedegir v. Phillips, 4 Cir., 85 F.2d 995, 996, as follows: 'Where there is substantial evidence in support of plaintiff's case, the judge may not direct a verdict against him, even though he may not believe his evidence or may think that the weight of the evidence is on the other side; for, under the constitutional guaranty of trial by jury, it is for the jury to weigh the evidence and pass upon its credibility. He may, however, set aside a verdict supported by substantial evidence where in his opinion it is contrary to the clear weight of the evidence, or is based upon evidence which is false; for, even though the evidence be sufficient to preclude the direction of a verdict, it is still his duty to exercise his power over the proceedings before him to prevent a miscarriage of justice. See Felton v. Spiro [6 Cir.], 78 F. 576. Verdict can be directed only where there is no substantial evidence to support recovery by the party against whom it is directed or where the evidence is all against him or so overwhelmingly so as to leave no room to doubt what the fact is. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720. Verdict may be set aside and new trial granted, when the verdict is contrary to the clear weight of the evidence, or whenever in the exercise of a sound discretion the trial judge thinks this action necessary to prevent a miscarriage of justice.' "

Aetna Casualty is cited with approval and quoted extensively in 6 Moore's Federal Practice, ¶ 59.05(3), ¶ 59.05(5) and ¶ 59.08(5), and from this decision and its supporting authorities it is to be concluded that the federal trial judge has not only the discretion to grant a new trial in order to prevent a miscarriage of justice, but it is his obligation to do so where it appears to him that the verdict has been arbitrary and against the clear weight of the evidence.

To the same effect is Wilson v. Bailey, 257 F.2d 352, 354 (10 Cir., 1958) and Tidewater Oil Co. v. Waller, 302 F.2d 638, 642, 643 (10 Cir., 1962). There, the Court of Appeals, in an opinion by Chief Judge Murrah (Judge Breitenstein dissenting) said (at page 642 of 302 F.2d):

"In granting the new trial, the court stated that 'As a thirteenth juror * * * the court cannot agree with the jury's verdict and * * * finds that justice can only be served by submitting this cause to another jury * * *.' It thus appears that the court's order is based on the view that the verdict was against the clear weight of the evidence. This being so, Tidewater points to the sharp conflict in the evidence on the critical issue of negligence, and says that the granting of a new trial in these circumstances amounts to a usurpation of the province of the jury as finders of fact."

And added (at page 643 of 302 F.2d):

"When the evidence is wholly insufficient to support a verdict, it is the duty of the trial court to direct a verdict or enter a judgment n. o. v., and the court has no discretion in that respect. But, the granting of a new trial involves an element of discretion which goes further than the mere sufficiency of the evidence. It embraces all the reasons which inhere in the integrity of the jury system itself. Felton v. Spiro, 6 Cir., 78 F. 576; Aetna Cas. & Surety Co. v. Yeatts, [4 Cir., 122 F.2d 350,] supra."

98

It is to be noted that Judge Breitenstein did not take issue with the statements of the majority as to the scope and extent of the trial judge's authority to grant new trials, but rather his view was that Oklahoma substantive law demanded determination of the case as a matter of law. The mentioned rules and principles are applicable to excessive damages. See 6 Moore's Federal Practice, ¶ 59.05(5). See also Murphy v. United States District Court, 145 F.2d 1018, 1020 (9 Cir., 1944), cert. denied 325 U.S. 891 (1945).

■ Remittitur is one other possible remedy where the damages are manifestly excessive. See 6 Moore's Federal Practice, ¶ 59.05(3) 3737–3739.

■ In the case at bar the evidence to prove damages is, as has been pointed out, sketchy and unsatisfactory. Also present are the problems of failure to offer satisfactory testimony to establish market value and highly unsatisfactory evidence to prove loss of use of the vehicle and loss of earnings incident to the demand for personal injury reimbursement.

In view of the foregoing, the judgment herein can not be allowed to stand and the Court's disposition is to grant a new trial in respect to the counterclaim. (The issue of the Hadley Auto Transport in relation to the Santa Fe having been finally determined and concluded) however, the defendant Koenig should be offered the option of accepting a lesser verdict, one which recognizes and gives effect to his demands and his proofs going to both property damage and personal injury.

It is the conclusion of the Court that a proper verdict in the case should be substantially less than that awarded and that the sum of Sixteen Thousand Five Hundred Dollars ($16,500.00) would adequately compensate the defendant Koenig. It is, therefore,

ORDERED that there be remittitur by Koenig of all sums in excess of Sixteen Thousand Five Hundred Dollars ($16,-500.00) and that if Koenig is agreeable

to acceptance of this lesser sum that his consent be filed within ten days following the receipt by Koenig's attorney of this order. Should the defendant Koenig fail, or refuse to file such a consent to acceptance of the sum of Sixteen Thousand Five Hundred Dollars ($16,500.00), (plus costs and allowable interest), it is

ORDERED that the verdict be set aside and that a new trial be granted as to the issues which arise from Koenig's counterclaim against the Atchison, Topeka and Santa Fe Railway Company.