John Joseph GARRICK, Jr.,
Plaintiff-Appellee,

v.

CITY AND COUNTY OF DENVER; Manager of Safety, Daniel P. Cronin; Chief of Police, Arthur G. Dill, Defendants,

Alan D. Jones, Defendant-Appellant.

No. 79-1376.

United States Court of Appeals,
Tenth Circuit.

June 29, 1981.

David J. Bruno of Bruno, Bruno & Bruno, Denver, Colo., for defendant-appellant, Alan D. Jones.

Clifford L. Beem of Tague, Goss, Schilken & Beem, P. C., Denver, Colo., for plaintiff-appellee.

Before SETH, Chief Judge, and BREITENSTEIN and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

John Garrick brought this action under 42 U.S.C. § 1983 against the City and County of Denver and Alan D. Jones, a Denver police officer. Garrick sought actual and exemplary damages, alleging his constitutional rights were violated when Jones shot him in the abdomen during a scuffle following a traffic stop. Jones counterclaimed for actual and punitive damages, claiming he was assaulted by Garrick. The jury awarded Garrick $20,500 in actual damages against Jones and the City and County of Denver, and $70,000 in exemplary damages against defendant Jones only. The City and County of Denver have not appealed. Jones appeals the trial court's denial of his motion for a new trial or remittitur. He contends that the $70,000 punitive damage award is the result of the jury's misconception regarding the purpose of exemplary damages and is grossly excessive. We affirm.

The facts of this lawsuit, viewed in the light most favorable to Garrick, are briefly as follows. At about 2:00 a.m. on May 26, 1976, Jones and his partner observed a car making an illegal U-turn. They stopped the car in which Garrick, the driver, and two companions were riding. Jones smelled burning marijuana, and ordered the occupants to get out of the car and to put their hands on the car roof. They complied. Jones began to search the car, whereupon Garrick asked him if he needed a warrant. Jones replied in the negative and struck Garrick on the back of the head. When Garrick turned around to look at Jones he was struck again. Garrick then grabbed Jones and a shoving match ensued with each man holding the other by the upper arms or shoulders. Jones is 6 feet 6 inches tall and weighed about 240 pounds at the time. Garrick is 5 feet 10 inches tall and weighed about 185 pounds. Garrick testified that he was holding onto Jones to protect himself from further blows. Garrick's companions remained with their hands on the car under the control of Jones' partner.

During this scuffle, Garrick made a statement to the effect that they ought to calm down and straighten the matter out. At this point Jones drew his service revolver and shot once at Garrick, grazing his ribs. Garrick then let go of Jones and raised his arms. Jones shot him again. The bullet

entered Garrick's abdomen and lodged near his spine.

As a result of the wound, Garrick had 30 centimeters of his small intestine removed. He has adhesions in his abdomen and will suffer permanent pain and indigestion.

The only issue raised on appeal concerns the punitive damage award. Jones concedes that the court properly instructed the jury on the issue. However, he contends the jury was confused about the nature of punitive damages and by its award intended to compensate Garrick for his pain and suffering rather than to punish Jones. He also argues that the award was grossly excessive under the circumstances.

The trial court correctly instructed the jury that punitive damages are awarded "in order to punish the wrongdoer for some extraordinary misconduct done to serve as an example or warning to others not to engage in such conduct." Rec., vol. IX, at 818. The court further instructed that punitive damages could be awarded only if the jury found that the act causing the injury was done maliciously, wantonly, or oppressively. He cautioned the jury that such an award should be "fixed with calm discretion and sound reason, and must never be awarded or fixed in amount by sympathy, bias or prejudice ...." *Id.* at 819–20.

■ Jones' theory that the jury misunderstood the nature of punitive damages is not bolstered by the inquiry which the jury addressed to the court during its deliberation. The verdict forms given to the jury contained blanks to be filled in for both actual damages and exemplary damages, depending on a favorable verdict either for plaintiff or for defendant on his counterclaim. The jury asked whether loss of earnings between the time of the incident and the present time fall within the category of actual or exemplary damages. The trial court correctly responded that this item was to be considered actual damages. Such an inquiry shows that the jury was making a conscientious effort to follow the court's instructions. To infer from this single question that the jury was unclear as to the category in which to place damages for pain and suffering is mere speculation, particularly in view of the jury's failure to seek further guidance from the court on this issue.

"We must assume that the jurors followed the law as given to them by the court." *Lloyd v. Grynberg,* 464 F.2d 622, 625 (10th Cir. 1972) (footnote omitted). Accordingly, we reject Jones' argument that the jury disregarded the clear and proper instructions set forth above and based the amount of punitive damages on Garrick's pain and suffering.

■ Jones also alleges that the amount of punitive damages is excessive under the circumstances of this case. Federal standards govern the determination of damages under the federal civil rights statutes. *See* 42 U.S.C. § 1988; *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 238–40, 90 S.Ct. 400, 405–06, 24 L.Ed. 386 (1969); *Furtado v. Bishop,* 604 F.2d 80, 96–97 (1st Cir. 1979), *cert. denied,* 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980). *See generally Martin v. Duffie,* 463 F.2d 464, 467 (10th Cir. 1972) ("[V]indication of federal civil rights ... is peculiarly subject to federal substantive law."); *see also Carey v. Piphus,* 435 U.S. 247, 257–59, 98 S.Ct. 1042, 1048–50, 55 L.Ed.2d 252 (1978). Punitive damages may be awarded under section 1983 even where they would not normally be recoverable under the local law in the state where the violation occurred. *McCulloch v. Glasgow,* 620 F.2d 47, 51 (5th Cir. 1980); *Caperci v. Huntoon,* 397 F.2d 799, 801 (1st Cir.), *cert. denied,* 393 U.S. 940, 89 S.Ct. 299, 21 L.Ed.2d 276 (1968). Thus, Jones' assertion that the amount of punitive damages awarded in this case should be reviewed under Colorado standards is without merit.

■ Under federal law, whether the trial court properly refused to grant remittitur or a new trial on the ground of an excessive damage award is tested by an abuse of discretion standard. *Brown v. Skaggs-Albertson's Properties, Inc.,* 563 F.2d 983, 988 (10th Cir. 1977); *Brown v. Richard H. Wacholz, Inc.,* 467 F.2d 18, 19–20 (10th Cir. 1972). "[A]bsent an award so excessive or

inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate." *Barnes v. Smith*, 305 F.2d 226, 228 (10th Cir. 1962). This standard is applicable to appellate review of punitive damage awards in civil rights litigation. *See, e. g., Zarcone v. Perry*, 572 F.2d 52, 56 (2d Cir. 1978).

We have carefully reviewed the record in this case. The evidence amply supports a conclusion that the shooting of Garrick resulted from an excessive and life-threatening use of force unwarranted by Jones' alleged need to defend himself or his partner. Section 1983 was enacted to remedy just such oppressive official conduct. On this record, the amount of punitive damages awarded by the jury is not so excessive as to shock our judicial conscience.

The judgment is affirmed.