Robert B. BLEVINS, Plaintiff-Appellee,

v.

CESSNA AIRCRAFT COMPANY, a Kansas Corporation, Defendant-Appellant.

No. 82–1533.

United States Court of Appeals, Tenth Circuit.

March 1, 1984.

Rehearing and Rehearing En Banc Denied May 25, 1984.

L.B. Ullstrom, Denver, Colo. (Robert P. Smith, Denver, Colo., was also on brief), for defendant-appellant.

John R. Hursh, Central Wyoming Law Associates, P.C., Riverton (William L. Miller, Thomas A. Fasse and Holly B. Brown, Riverton, Wyo., were also on brief), for plaintiff-appellee.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

HOLLOWAY, Circuit Judge.

This is an appeal from a judgment of $2 million entered against defendant in a diversity case. A jury in the United States District Court for the District of Wyoming awarded the damages to plaintiff, a passenger aboard a Cessna Model 340 aircraft manufactured by defendant which was forced to make an emergency off-field landing in Riverton, Wyoming on July 30, 1978 after developing engine trouble.

Defendant requests that we reverse the judgment below and either order a new trial or a remittitur. Defendant contends that (1) certain evidentiary matters concerning plaintiff's cross-examination of defendant's experts and the admission of evidence of the aircraft's "crashworthiness" were prejudicial; (2) the $2 million verdict is excessive; (3) the district court failed to individually question the jurors concerning an allegedly prejudicial television newscast on aircraft safety; and (4) the district court gave erroneous jury instructions on the divisibility and enhanced nature of plaintiff's injuries.

We disagree with these contentions and affirm the judgment in all respects except that we modify the judgment, as the parties agree should be done,[1] by reducing the judgment by $200,000, the amount plaintiff received pursuant to a pretrial settlement of his claim against the operator of the aircraft, as a setoff under Wyo.Stat. § 1–1–113(a)(i) (1977).

### I.

#### Evidentiary Objections

1. *Cross Examination of Defendant's Experts*

 Defendant argues that plaintiff's counsel used inadmissible hearsay in cross-examining defendant's experts Johnson and Thompson. Defendant contends that the testimony of these experts established that there was a gouge or depression in the soil at the crash site that was caused by the high impact force of the aircraft hitting the hillside. This evidence was crucial in supporting defendant's argument at trial that plaintiff's injuries were caused by the high impact forces which greatly exceeded the design strength of the aircraft required by FAA regulations. There was evidence at trial tending to show that plaintiff's injuries resulted from the failure of the air-

craft's seat tracks on impact,[2] which caused the seats to disengage, with plaintiff being thrown about the cabin, still strapped to his seat by the seat belt. Plaintiff's expert testified that the impact forces were well below the FAA required design strength levels. The impact force thus was critical in determining whether the seats failed in a situation which was within the FAA required strength levels.

We conclude that no reversible error is shown in connection with the cross-examination of defendant's experts. Plaintiff used Exhibit 359 in cross-examining expert Johnson. III R. 160–62. Exhibit 359 is a copy of an accident report prepared by Claude Underwood, an employee of defendant, a few days after the accident. Exhibit 359 was admitted into evidence at trial by stipulation of the parties. I R. 165. Plaintiff's counsel's use of Exhibit 359 in cross-examining defendant's expert Johnson therefore was proper.

Defendant also vigorously contends that plaintiff's counsel used inadmissible hearsay in cross-examining defendant's expert Thompson. Defendant relies on *Bobb v. Modern Products, Inc.,* 648 F.2d 1051 (5th Cir.1981), in arguing that plaintiff's counsel improperly referred to Exhibit 358A, a diagram prepared by Underwood at his deposition prior to trial. This deposition was not admitted in evidence and when Exhibit 358A was offered, it was objected to and excluded. III R. 189. Defendant argues that the questioning concerning this exhibit constitutes reversible error because plaintiff questioned Thompson concerning the lack of a gouge being indicated on the diagram, which was not in evidence.

It is true that in cross-examining Thompson on the presence of a trench or gouge, which defendant sought to establish, plaintiff's counsel asked if Underwood had not drawn a diagram; counsel then started to show Exhibit 358A to Thompson even though the deposition and this deposition

---

1. *See* Appellant's Opening Brief at 47–49; Appellee's Brief at 6; Appellant's Reply Brief at 24.

2. Dr. Snyder, plaintiff's expert witness, testified that the proximate cause of plaintiff's inju-

ries was "the seat failing and thrusting [plaintiff] out of his seat position." III R. 23. He also testified that other factors bearing on plaintiff's injuries were the lack of a shoulder harness and the attachment of the seat belt to the seat rather than to the floor. *Id.* at 23.

exhibit were not in evidence. When defendant objected to such use of the exhibit, the trial judge said the objection "is relevant," which we take to mean that the judge agreed with the substance of the objection. *Id.* at 187. Plaintiff's counsel then began to question Thompson again about the unadmitted Underwood deposition and diagram, despite the court's ruling. In light of the court's statement, counsel should not have done this unless and until the deposition and diagram exhibit were admitted.

However, we do not feel that reversible error occurred. An accident report prepared by Mr. Underwood, Exhibit 359, was in evidence; testimony properly developed that it contained no reference to a trench. *Id.* at 187. Moreover, when deposition Exhibit 358A was offered, defendant's objection was promptly sustained. *Id.* at 189. The instant case is thus somewhat different from *Bobb,* where the trial judge permitted reading from the hearsay report and the use of statements in the unadmitted report to impeach. 648 F.2d at 1055–56. In the circumstances before us, we find no reversible error.

We need not consider the alleged impropriety of references to Underwood by plaintiff's counsel during closing argument and to the absence of a gouge at the impact site in view of defendant's failure to timely object to these comments.

**2. *Evidence of the Aircraft's "Crashworthiness"***

■ Defendant contends that the district court committed reversible error in permitting, over objection, testimony concerning the "crashworthiness" of the aircraft, in violation of the motion in limine. We conclude that any error committed in this regard was harmless in light of defendant's failure to show how he was prejudiced by this testimony.

## II.

*The Claim of Excessiveness of the Verdict*

Defendant makes several arguments to support his claim that the $2 million award is excessive. In examining these arguments, we are mindful that the district court stated in its order denying defendant's motion for a new trial that:

> Defendant argues that the damages awarded in this case were so great that they reflect bias, prejudice, and passion on the part of the jury. A $2 million verdict is generous indeed. Yet in light of the evidence introduced at trial and the instructions read to the jury regarding damages, it cannot be said that the verdict was so excessive as to mandate the grant of a new trial.

III R. 598.

■ We must afford this conclusion by the trial judge considerable deference on appeal. *See, e.g., Holmes v. Wack,* 464 F.2d 86, 89 (10th Cir.1972) (trial court's ruling granting or denying motion for new trial reversed only for "gross abuse of discretion"); 6 J. Moore, *Moore's Federal Practice* ¶ 59.05[3], at 59–59 (1982) ("The trial court's determination as to whether the verdict is the result of passion or prejudice will not be disturbed on appeal, unless the determination is clearly erroneous."). Moreover, "absent an award so excessive as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the damages is considered inviolate." *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 703 F.2d 1152, 1168 (10th Cir.1981) (en banc) (plurality opinion), *cert. denied,* —— U.S. ——, 104 S.Ct. 92, 78 L.Ed.2d 99 (1983); *see also id.* at 1181–82 (same) (Logan, J., dissenting); *Metcalfe v. Atchison, Topeka and Santa Fe Railway Co.,* 491 F.2d 892, 898 (10th Cir.1974); *Barnes v. Smith,* 305 F.2d 226, 228 (10th Cir.1962).

■ Defendant argues that there is insufficient evidence to support the $1.3 million portion of the $2 million verdict attributable to plaintiff's pain, suffering and disability and that the pain and suffering award is particularly excessive in light of awards in other jurisdictions.[3] Appellant's

---

**3.** Along with answers to special interrogatories on negligence and causation, the jury returned

a general damages verdict for $2 million for

Opening Brief at 11–15. We must disagree in light of the severe injuries suffered by plaintiff in the emergency off-field landing. The physician who treated plaintiff at the Riverton, Wyoming hospital testified regarding the extent of plaintiff's injuries. The physician testified that when plaintiff arrived at the hospital he was critically ill and in "tremendous pain," "fighting for his breath, really literally to stay alive." II R. 6, 37. The physician also stated that plaintiff had probably at least 25 to 30 fractures of his ribs and cartilages, that rib fractures are "very painful," and that "his chest was literally mush. You could take your hand and you could just take his chest and it was like putty. And you could feel all the bones crunching when you touched them." *Id.* at 16, 22. In order to keep plaintiff's lungs functioning, sterile salt water was pumped into his lungs. Suction catheters were inserted in his lungs every hour for several days. *Id.* at 28–31. The physician also testified that plaintiff was in "an awful lot of pain from his clavicle fracture." *Id.* at 17. Numerous bronchoscopes also were performed to suck mucous from plaintiff's lungs, a procedure the physician described as "very painful." *Id.* at 28.

Plaintiff spent a month in the hospital's intensive care unit. *Id.* at 33. The physician also testified that since leaving the hospital, plaintiff has suffered pain from, among other things, complications of his multiple rib fractures which resulted in further surgery, permanent injury to his shoulder and lower back, and acute arthritis that was aggravated by his injuries. The physician stated that the pain associated with the shoulder and lower back injuries, and with the arthritis, is a permanent condition. *E.g., id.* at 37–41, 43–44, 52–55, 83. Moreover, defendant offered no contradictory medical testimony challenging the extent of pain and suffering and its duration, as well as its permanent effect. Plaintiff's evidence was that he was 59 years of age at

the time of the crash and that the Standard Mortality Table showed a 76.78 year life expectancy for one of his age. III R. 73, 80, 82–83. After considering the scope of plaintiff's injuries as detailed in the record and the evidence concerning the extreme pain he endured, we cannot say that the jury's award for pain, suffering and disability "shocks the judicial conscience."

■ Defendant also argues that plaintiff's counsel made an impermissible "Golden Rule" appeal in his closing argument to the jury that they put themselves in plaintiff's position. Defendant points to three alleged invocations of the Golden Rule. XI R. 90, 92, 94. We note that a Golden Rule appeal "is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Ivy v. Security Barge Lines, Inc.,* 585 F.2d 732, 741 (5th Cir.1978), *rev'd on other grounds,* 606 F.2d 524 (5th Cir.1979) (en banc), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980). Although the remarks of plaintiff's counsel were improper, defendant failed to make a timely objection. We conclude that the remarks do not amount to plain error requiring reversal in the absence of an objection, particularly because of the proper instructions given the jury on the law it should apply in determining liability and damages. *See, e.g., Stokes v. Delcambre,* 710 F.2d 1120, 1128 (5th Cir.1983) (counsel's Golden Rule appeal in closing argument did not warrant plain error reversal when opposing counsel did not object). *Cf. Spray-Rite Service Corp. v. Monsanto Co.,* 684 F.2d 1226, 1246 (7th Cir.1982) (counsel's Golden Rule remark "clearly improper" but constituted harmless error where objectionable remark not repeated and jury properly instructed on law to apply in determining liability and damages),

plaintiff. III Orig.R. 465. Plaintiff's original prayer for overall damages, which was mentioned to the jury in argument, was for $2.45 million. Plaintiff's economic expert testified that plaintiff's lost earnings to date, potential loss of earning capacity to age 70, lost fringe benefits, and potential loss of retirement in-

come, reduced to present value, amounted to $671,030. III R. 81–85. Plaintiff's medical expenses were $37,330. V R. Exhibit 314. Thus up to some $708,360 may have been awarded for these damages. And it follows that at least

*cert. granted,* — U.S. —, 103 S.Ct. 1249, 75 L.Ed.2d 479 (1983).[4]

Defendant contends that several other arguments along with the improper "Golden Rule" remarks by plaintiff's counsel aroused undue passion and prejudice on the part of the jury, resulting in an excessive verdict. We have examined the arguments made by all counsel. It is true that plaintiff's counsel made other improper appeals for sympathy and some to prejudice that clearly should not have been made. However, considering the arguments as a whole, and the lack of any timely objection, we find no reversible error. *See United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 238–40, 60 S.Ct. 811, 851–52, 84 L.Ed. 1129 (1940). The Court there said that counsel "cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that the comments to the jury were improper and prejudicial." The Court also recognized, however, that in the public interest appellate courts on their own motion may "notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 239, 60 S.Ct. at 851.

Defendant also asserts that plaintiff's counsel in his closing argument improperly urged the jury to use a mathematical formula to determine plaintiff's damages for pain and suffering. Plaintiff's counsel "suggest[ed]" that the jury "use a factor of four," and "multiply [plaintiff's reduced earnings, lost benefits, etc., and out of pocket expenses] by four, . . . [which has] been Plaintiff's demand from the very beginning in this case at over $2.4 million." IV R. 57.

We note these comments in the closing argument of plaintiff's counsel:

> You can attach whatever you want to for his disability, for his pain and suffer-

ing. That's your job. I've suggested a factor of four. You have—there is no formula. Who can measure pain?

> I guess we all have to sort of figure it out for ourselves what it's like every night not to be able to sleep and to hurt all day. It's up to you. There is no way I can help you much there . . . .

*Id.* at 91. Granting that plaintiff's counsel made an improper reference to a mathematical formula, we hold that reversal is not required. Defendant failed to object to the reference to the mathematical formula, which generally bars a later complaint about the argument. *See United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 239, 60 S.Ct. 811, 851, 84 L.Ed. 1129 (1940); *Lange v. Schultz,* 627 F.2d 122, 127 (8th Cir.1980). *See also Combined Insurance Co. of America v. Sinclair,* 584 P.2d 1034, 1050–51 (Wyo.1978) (reference to mathematical formula not prejudicial error where award not excessive and timely objection not made). Considering the content of the comments here, together with the record as a whole, we are not persuaded to hold that there was plain error requiring reversal.

■ Defendant argues that the district court erred in denying his motion for a directed verdict on the issue of damages for lost wages and contends that the court should have held as a matter of law that plaintiff voluntarily retired. Plaintiff's physician testified that plaintiff was 100% disabled from "any kind of active physical activity in terms of working." II R. 43. Plaintiff testified that he retired because he was not physically capable of doing his job as a foreman for Amoco Oil Corporation, which involved substantial amounts of field work inspecting oil rigs. III R. 131, 140–41. Plaintiff's supervisor testified that after the accident plaintiff was unable to do a satisfactory job. I R. 186.[5] We have exam-

---

some $1.3 million of the award was for pain, suffering and physical disability.

**4.** The Supreme Court granted certiorari on the antitrust issues in the case. 52 U.S.L.W. 3448–49 (Dec. 13, 1983); 52 U.S.L.W. 3075 (Aug. 16, 1983).

**5.** Amoco's head of personnel in Riverton testified that plaintiff after the injury was able to perform his job. III p. 76.

ined the record and are satisfied that in light of the testimony from plaintiff, his physician and his supervisor on the extent of his disability, the issue of lost wages and voluntary retirement was properly one for the jury.

For the above reasons we conclude that the $2 million jury award, while very substantial, was not so excessive as to require reversal or remittur in light of the record as to all the items of damages.

## III.

### *Prejudicial Publicity*

■ Defendant contends that the district court committed reversible error by not individually questioning the jurors on whether they saw an NBC news special report concerning air safety and the crash of an Air Florida jet in Washington, D.C. We disagree. The trial judge admonished the jury throughout the trial not to read, watch or listen to anything about the case. IV R. 96. After the newscast in question occurred, the judge refused to individually question the jurors on whether they had seen it but instructed them to disregard any broadcasts "not discussing this case, but discussing matters of air safety." *Id.* at 106–07. After the jury returned its verdict, the judge asked any of the jurors who saw the NBC newscast on the Air Florida crash to raise their hand. No juror raised his hand. *Id.* at 118. In these circumstances we find that the defendant was not prejudiced by the failure to individually question the jurors.

## IV.

### *Jury Instructions*

■ Lastly, defendant argues that the district judge erred as a matter of law in instructing the jury that plaintiff's injuries were indivisible and thus not apportionable. Defendant contends that the district judge erred in failing to instruct the jury that defendant was liable only for enhanced injuries suffered by plaintiff resulting from negligence of the aircraft manufacturer, apart from injuries caused by the operation of the aircraft. We disagree.

In *Chrysler Corp. v. Todorovich,* 580 P.2d 1123, 1131, (Wyo.1978), the court dealt with the possible liability of the manufacturer of the automobile in which a plaintiff was riding and that of the driver of a following vehicle involved in a rear end collision. The Wyoming Supreme Court held that an instruction that a defendant is liable only for enhanced injuries should not be given if the injuries suffered by the plaintiff "are incapable of any logical, reasonable or practical division." The district judge here cited *Todorovich* and held that the injuries were indivisible. IV R. 22. The judge then instructed the jury that it could not apportion the injuries between the defendant manufacturer and the operator of the plane. *Id.* at 111–12.

We cannot hold that the trial judge erred as a matter of law in ruling that plaintiff's injuries were indivisible. Defendant points to alleged gaps in the testimony of plaintiff's experts concerning the causal link between certain of the many injuries suffered by plaintiff and the defects in the aircraft. We refuse to substitute our judgment for that of the trial judge in light of the complicated causation issue in this case and the extensive evidence developed at trial on plaintiff's injuries and the design defects of the aircraft. *Cf. Bell v. Mickelsen,* 710 F.2d 611, 618–19 (10th Cir.1983). The trial judge charged the jury that if the injuries were "solely a result of the negligence of Casper Air Service and its pilot, then you must find for Defendant. If, however, you find from a preponderance of the evidence that the negligence of the Defendant, Cessna Aircraft Company, was a proximate cause of the Plaintiff's injuries, then you may award damages to the Plaintiff even though you also believe that the negligence of the pilot, Mr. Day, or Casper Air Service was a contributory factor in causing the accident." IV R. 112–13. We find no error in the

application of Wyoming law by the trial judge in this record.

## V.

In sum, we find no reversible error has been demonstrated by defendant, except that the judgment should be modified as plaintiff agrees in light of Wyoming law and the $200,000 payment received by plaintiff in the settlement with the company operating the aircraft. Accordingly, the judgment of $2,000,000 is modified to reduce it to $1,800,000 and, as modified, the judgment is affirmed.