Gary RAWSON, Plaintiff,

v.

SEARS, ROEBUCK AND COMPANY, Defendant.

Civ. A. No. 81–K–1454.

United States District Court, D. Colorado.

Aug. 28, 1985.

James A. Carleo, Colorado Springs, Colo., for plaintiff.

Gregory A. Eurich, Holland & Hart, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Plaintiff's Complaint was filed in July, 1981, in the District Court in and for the County of Pueblo. It was removed to the United States District Court for the District of Colorado. On January 27, 1982, all but three of the plaintiff's claims for relief were dismissed. *Rawson v. Sears, Roebuck and Co.*, 530 F.Supp. 776 (D.Colo. 1982). In that same opinion, I held that a private right of action could be implied under C.R.S. § 8-2-116.

On January 10, 1983, I granted summary judgment in favor of Sears on two of the plaintiff's remaining three claims. *Rawson v. Sears, Roebuck and Co.*, 554 F.Supp. 327 (D.Colo.1983). I denied Sears' motion for summary judgment on plaintiff's claim of violation of C.R.S. § 8-2-116, holding that the findings and order of the Colorado Industrial Commission, affirmed by the Colorado Court of Appeals, did not collaterally estop plaintiff from litigating the issue of the reason for plaintiff's discharge. I also denied Sears' Motion for Reconsideration and Sears' Motion for Summary Judgment or, in the Alternative, for Certification of Questions of Law.

On January 20, 1984, I issued an order granting and denying pre-trial motions. I granted Sears' request for a separate trial on the issue of liability, pursuant to Rule 42, Fed.R.Civ.P. I further ordered that because Mr. Jansen had testified at his deposition that the reason for plaintiff's discharge was the mishandling of inventory, Sears would not be allowed to introduce any statements or testimony relating to incidents or conduct of the plaintiff other than those related to the inventory charges.

On January 30, 1984 a jury of seven found that Sears, Roebuck and Co. violated Colo.Rev.Stat. § 8-2-116 when it terminated Gary Rawson from his job as manager of its Pueblo store in March of 1979. Defendant moved for a directed verdict at the end of plaintiff's case and at the end of its own case. I denied both motions.

On July 15, 1985 a new jury of six was selected to try the issue of damages. Trial proceeded to conclusion. Instructions of law were given to the jury without objection. On July 19, 1985 the jury returned its verdict awarding the plaintiff damages against the defendant in the following amounts:

A. $580,500.00 for lost wages and benefits from the date the plaintiff would have retired.

B. $264,410.00 for future wages and benefits and reduction in the value of pension benefits from the date of verdict discounted to present value.

C. $5,000,000.00 for pain, suffering and humiliation, both past and future.

The jury also found, according to Colorado law, beyond a reasonable doubt that the injuries and losses complained of by the plaintiff were attended by circumstances of malice or a wanton or reckless disregard of the rights and feelings of the plaintiff and awarded $10,000,000.00 as exemplary damages.

Defendant has moved for judgment notwithstanding the verdict or, in the alternative for a new trial or remittitur. Defendant makes the following four arguments:

1. *This court should enter judgment in favor of Sears notwithstanding the ver-*

*dict with respect to the jury's award of punitive damages.*

Defendant submits that the jury verdict of $10,000,000 for punitive damages is unsupported by the evidence and thus seeks judgment N.O.V. Sears claims that the evidence presented at trial demonstrates that its conduct did not meet the standard required to justify punitive damages ("beyond a reasonable doubt"). It also claims that plaintiff failed to show an evil intent or reckless disregard of his rights and feelings, which is necessary for the award of punitive damages. Rather, defendant points to plaintiff's own misconduct during his employment with Sears, conceded by plaintiff at trial, as supportive of its articulated reasons for discharging plaintiff.

2. *The compensatory damages for pain and suffering awarded by the jury are excessive and contrary to the evidence.*

Defendant states that $5,000,000 awarded by the jury for pain, suffering and humiliation is grossly excessive and unreasonable. Defendant calls on me to exercise sound discretion to prevent a miscarriage of justice. Defendant states that the "law in this District is clear that a 'federal trial judge has not only the discretion to grant a new trial in order to prevent a miscarriage of justice, but it is his *obligation* to do so where it appears to him that the verdict has been arbitrary and against the clear weight of the evidence.'" *Atchison, Topeka and Santa Fe Railway Company v. Hadley Auto Transport,* 216 F.Supp. 94, 97 (D.Colo.1963) (see pp. 6–7 of Defendants' Brief). Defendant also notes that exercise of such a power by the court "is not in derogation of the right of trial by jury but is one of the historic safeguards of that right." *Holmes v. Wack,* 464 F.2d 86, 88 (10th Cir.1972).

Defendant further observes that the Tenth Circuit in *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 703 F.2d 1152, 1168 (10th Cir.1981) has set down guidelines for whether an award by a jury of *either* compensatory or punitive damages can be set aside.

We have said that absent an award so excessive as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the damages is considered inviolate. *Metcalf v. Atchison, Topeka and Santa Fe Railway Co.,* 491 F.2d 892, 898 (10th Cir.) ... Such bias, prejudice or passion can be inferred from excessiveness. *Wells v. Colorado College,* [478 F.2d 158, 162 (10th Cir.)] ... However, a verdict will not be set aside on this basis unless it is so plainly excessive as to suggest that it was the product of such passion or prejudice on the part of the jury. [Id.] ...

Such cases recognize the principle that if the court determines that the verdict was the result of passion or prejudice, or for any other reason it appears that the jury erred or abused its discretion not only on the issue of damages but also on the issue of liability, the court must unconditionally order a new trial and cannot give the plaintiff the option to accept a lesser amount....

However, another remedy is also recognized. Where the court concludes there was error only in an excessive damage award, but not one also tainting the finding of liability, the appellate court may order a remittitur and alternatively direct a new trial if the plaintiff refuses to accept the remittitur, a widely recognized remedy. *Holmes v. Wack,* 464 F.2d 86, 89 and n. 3 (10th Cir.) ...

While defendant agrees it is an emotional event for plaintiff to lose a job he has held all his working life, it opines that the "award for pain and suffering returned by the jury, however, suggests that Rawson's depression and despondency has a compensatory value of several times that of a traumatic physical injury such as would render an individual a quadraplegic" (*see* p. 9 of Defendant's Brief). (Defendant cites two recent Colorado district court cases awarding quadraplegic plaintiffs $4,900,000 and $4,100,000 for pain and suffering, loss of income, and medical expenses.) (*See* p. 9 of Defendant's Brief.) Defendant also

notes that plaintiff's counsel suggested a figure of $1,000,000 as appropriate damages for pain and suffering. Thus, defendant claims, the jury's verdict was excessive and not reasonably based upon the evidence at trial.

3. *The damages awarded by the jury for economic loss are also excessive and unreasonable and a new trial should be granted.*

Without citing any case law and relying entirely upon the expert testimony of Dr. Wykstra regarding plaintiff's loss of wages, defendant claims that the jury's award of damages for lost wages and benefits as well as future wages and benefits was in excess of any evidence in the record. Based on such testimony, defendant asserts that the jury award of $580,500 for lost wages and benefits should be reduced to $314,000. It also asserts that the jury award for economic loss exceeded any evidence on the subject by $101,510. Thus, defendant requests a new trial on all issues relating to wage loss, past and future.

4. *The punitive damages awarded by the jury are grossly excessive and unreasonable, and a new trial should be granted.*

Defendant states a new trial must be granted because of the extraordinarily excessive amount of punitive damages awarded by the jury. While defendant concedes a jury has discretion in making punitive damages awards, it notes that such damages are subject to the supervision of the court which may order remittitur or a new trial to prevent a miscarriage of justice. Defendant further notes that in Colorado the amount of punitive damages awarded must bear some relation to the gravity of the injuries sustained by plaintiff and to the amount of compensatory damages, *Frick v. Abell,* 198 Colo. 508, 602 P.2d 852, 854 (1979); and the degree of the defendant's malice must also be considered in determining the proper relationship between punitive and compensatory damages, *Taylor v. Sandoval,* 442 F.Supp. 491, 496 (D.Colo.1977).

Defendant calls my attention to several facts to be considered in determining the amount of punitive damages which reasonably could be awarded to plaintiff. Defendant first argues that evidence demonstrating its evil intent or reckless disregard for the feelings of plaintiff is minimal to nonexistent. Second, assuming that I will reduce to some substantial degree the compensatory damage award for pain and suffering, defendant notes that the punitive damage award should be reduced proportionately. Finally, defendant notes that plaintiff only sought punitive damages in the amount equivalent to the compensatory damages requested in his complaint; even if the compensatory damage award is not reduced, this ratio suggests that punitive damages should not exceed the amount of compensatory damages awarded.

In conclusion, defendant asserts that such an excessive award of punitive damages demonstrates that the jury acted out of prejudice, passion and sympathy for the plaintiff. Defendant thus requests a new trial absent the acceptance of a substantial remittitur of the punitive damages.

In the majority of cases, the discussion of remittitur relates only to punitive damages. Several cases, however, address the issue of remittitur of actual damages. In *K–B Trucking Co. v. Riss International Corporation,* 763 F.2d 1148 (10th Cir.1985), the jury had awarded plaintiffs actual and punitive damages on their fraudulent misrepresentation claims against two defendants. The Court of Appeals found sufficient evidence to support the jury's findings of liability against both defendants, as well as sufficient evidence to support the actual damage award against one of the defendants; there was insufficient evidence to support an actual damage award against the second defendant, however. The court, therefore, stated that remittitur would be appropriate under the circumstances. The court was guided by the "abuse of discretion" standard enunciated in *Garrick v. City and County of Denver,* 652 F.2d 969, 971 (10th Cir.1981) which stated:

Under federal law, whether the trial court properly refused to grant remit-

titur or a new trial on the ground of an excessive damage award is tested by an abuse of discretion.

In *Garrick* the court found that the trial court had abused its discretion in light of the insufficiency of the evidence to support the actual damage award against the second defendant. The trial court thus should have ordered remittitur and alternatively, directed a new trial if the defendant refused to accept the remittitur.

*Blevins v. Cessna Aircraft Co.*, 728 F.2d 1576 (10th Cir.1984) involved a product liability action against an airplane manufacturer in which the plaintiff sought damages for injuries during an emergency off-field landing after the plane developed engine trouble. After consideration of plaintiff's injuries as detailed in the record and the evidence concerning the extreme pain he endured, the court could not say that the jury's award of $1.3 million (of the $2 million verdict) for pain, suffering, and disability "shocks the judicial conscience." The court also refused to find reversible error based on defendant's argument that plaintiff's counsel made improper "Golden Rule" remarks (remarks encouraging the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.) The court conceded that plaintiff's counsel made a few improper remarks, appealing for sympathy and some prejudice, but in considering the remarks and arguments as a whole, and noting the lack of any timely objection, the court found no reversible error. The court concluded that "the $2 million jury award, while very substantial, was not so excessive as to require reversal or remittitur in light of the record as to all the items of damages." *Id.* at 1582.

In *Hurd v. American Hoist and Derrick Co.*, 734 F.2d 495 (10th Cir.1984), a successful products liability action was brought against a manufacturer of an oil field safety block, and the district court denied a subsequent motion for a new trial and for remittitur. The defendant appealed, challenging the award of over $60,000 for "severe and permanent injuries, great pain of body and mind and permanent disability."

*Id.* at 502. In rejecting defendant's claim, the court held:

In light of the evidence of serious injury and pain and suffering, we are not persuaded that the damage award was excessive or unsupported by the evidence. '[A]bsent an award so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate.' *Id.* at 503, *quoting Garrick v. City and County of Denver*, 652 F.2d 969, 971–72 (10th Cir.1981) which quotes *Barnes v. Smith*, 305 F.2d 226, 228 (10th Cir.1962).

Under our standard, we conclude that here the award was not so plainly excessive that we should infer that it was the result of passion or prejudice, and we cannot hold the award is shocking to the conscience of the court; therefore we should not order a remittitur. *Id.*

Colorado courts and the Tenth Circuit in *Malandris* and in other decisions, have consistently held that while bias, prejudice or passion can be inferred from an excessive damage award, a verdict will not be set aside unless it is plainly excessive so as to suggest that it was the product of such passion or prejudice on the part of the jury. *Blevins v. Cessna Aircraft Co.*, 728 F.2d 1576 (10th Cir.1984); *Garrick v. City and County of Denver*, 652 F.2d 969, 971–72 (10th Cir.1981); *Hurd v. American Hoist and Derrick Co.*, 734 F.2d 495 (10th Cir. 1984); *Leo Payne Pontiac, Inc. v. Ratliff,* 29 Colo.App. 386, 486 P.2d 477 (1971), *rev'd on other grounds*, 178 Colo. 361, 497 P.2d 997 (1972).

In *Burns v. McGraw-Hill Broadcasting Company, Inc.*, 659 P.2d 1351 (Colo.1983), the Supreme Court of Colorado held that in a defamation case, it would not set aside the jury's determination of damages unless they are "so outrageous as to strike everyone with the enormity and injustice of them, and so as to induce the court to believe that the jury must have acted with prejudice, partiality or corruption." *Id.* at

1356 (*quoting Riss & Co. v. Anderson*, 108 Colo. 78, 85, 114 P.2d 278, 281 (1941)). The *Riss* opinion, authored by Mr. Justice Young, in turn quotes heavily from *Colorado Springs & Interurban R.R. Co. v. Kelley*, 65 Colo. 246, 176 Pac. 307:

> As relates to the contention of excessive damage, we must bear in mind and be governed by the rule laid down by Chancellor Kent more than a century since, and generally adhered to by all courts, and by this court; that it is exclusively the province of the jury to estimate and assess the damages, and that the amount to be allowed in such cases rests largely in their sound discretion.

He said:

> The question of damages was within the proper and peculiar province of the jury. It rested in their sound discretion, under all the circumstances of the case, and unless the damages are so outrageous as to strike everyone with the enormity and injustice of them, and so as to induce the court to believe that the jury must have acted from prejudice, partiality or corruption, we cannot, consistently with the precedents, interfere with the verdict. It is not enough to say, that in the opinion of the court, the damages are too high, and that we would have given much less. It is the judgment of the jury and not the judgment of the court, which is to assess the damages in actions for personal torts and injuries.

And as was well said by Justice Story in *Thurston v. Martin*, 5 Mason 497, Fed. Cas. No. 14018:

> It is one thing for a court to administer its own measure of damages in a case properly before it, and quite another thing to set aside the verdict of a jury because it exceeds that measure.

*Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187 (Colo.1984) involved a products liability action to recover compensatory and punitive damages from a manufacturer of an intrauterine device. In its discussion of punitive damages, the court noted that such damages do not admit of precise determination; thus, the amount of the award must necessarily rest, in the first instance, within the discretion of the fact finder. *Id.* at 220. While there is no precise formula to determine the relationship between punitive and actual damages, there is a need for judicial scrutiny to ensure that the jury is not impermissibly motivated by prejudice or not properly guided by the purposes for punitive damages. The court noted that

> [a]lthough a ten-to-one ratio of punitive to compensatory damages warrants close judicial scrutiny, we note that high ratios have been upheld where the record shows that the jury was properly guided by the purposes of a punitive damages award in reaching its verdict. *See, e.g., Mailloux v. Bradley*, 643 P.2d 797 (Colo. App.1982) (rations of 10:1 and 35:1 upheld); *see also, e.g., Vossler v. Richards Mfg. Co., Inc.*, 143 Cal.App.3d 952, 192 Cal.Rptr. 219 (1983) (20:1 ratio upheld); *Ettus v. Orkin Exterminating Co. Inc.*, 233 Kan. 555, 665 P.2d 730 (1983) (24:1 ratio upheld) ... *Id.* at 220.

In *Palmer, supra*, the court saw no reason to view the jury's verdict

> as other than the conscientious decision of a jury to punish a wrongdoer with a penalty commensurate with the seriousness of the misconduct and the financial ability of the offender to pay and, concomitantly, to deter [the defendant] and others from similar acts of misconduct in the future. *Id.* at 221.

Several Colorado appellate court cases address this same issue. In *Martin v. Bralliar*, 36 Colo.App. 254, 540 P.2d 1118, 1122 (1975), a medical malpractice action, the court stated that the "assessment of damages is the exclusive province of the jury, and it is only in the clearest cases that its award will be overturned on review." In *Good v. A.B. Chance Co.*, 39 Colo.App. 70, 565 P.2d 217 (1977), a wrongful death action against the manufacturer and retailer of an aerial boom device, the jury award exceeded by $44,000 the amount of pecuniary loss projected by the plaintiff's economist. The court did not find the jury's award to be grossly excessive since the expert had conceded his figures were conservative and the jury was not required to

adhere strictly to the expert testimony. *Id.* at 226.

An A.L.R. annotation addresses the recovery of damages for emotional distress in cases of discrimination based on sex and marital status. Annot., 61 A.L.R.3d 944 (1975). The annotation notes:

> By way of background, it should be noted that the courts in most jurisdictions where the question has arisen have in the appropriate circumstances permitted recovery of damages for emotional distress resulting from a variety of forms of discrimination. *Id.* at 945.

Normally, under common law principles, courts have required a showing of outrageous conduct in order to obtain such recovery. Courts have relaxed this standard, however, where a special relationship was shown between the parties—i.e., employer-employee, "apparently upon the theory that it would be tantamount to extortion to permit a defendant who wields actual or apparent power over the plaintiff to abuse his position." *Id.* at 945.

It is to be remembered that this is a case involving the law of Colorado. It is not related in any way to the federal Age Discrimination in Employment Act nor to the congressional history of that Act nor to policies and decisions of federal courts interpreting that Act. Here, the plaintiff filed his case in a state court pursuant to a state statute. The case was removed to the federal court by the defendant. Nevertheless, Colorado law governs.

Indeed, the plaintiff's choices of law and forum set upon him a much higher burden. Under the Colorado statute age discrimination must be shown to be the sole and only reason for termination. Having met that burden, a plaintiff is entitled under Colorado law to recover unliquidated as well as liquidated damages. If plaintiff proves his claim for relief, he may also recover exemplary damages if he can prove beyond a reasonable doubt that the wrong done to him was attended by circumstances of fraud, malice or insult, or a wanton and reckless disregard of his rights and feelings.

I have written three opinions in this case, listened to the evidence in two separate trials before two distinct juries. I find no evidence to suggest that the verdict returned in either trial was the product of passion, prejudice or misconduct. Nor do I find that the verdict on the damages trial was contrary to the evidence. It is obvious that the jury considered the evidence and, in its wisdom, rejected the defendant's evidence. Issues of credibility are supposed to be resolved by a jury as the finders of fact. Indeed, it is probable that this jury rejected defendant's evidence because the members of the jury found it was pretextual.

Certainly, evidence was presented which, if believed, would have supported a defense verdict. In equal measure, evidence was presented, and apparently believed, that justified verdicts on actual as well as exemplary damages.

At the time of his firing the plaintiff was almost sixty years old. From completion of his military service in World War II until his termination he devoted his entire working life to the defendant's business. For thirty-three years his performance was never below satisfactory, was frequently superior and, in some instances, was recognized as excellent. His performance was repeatedly and systematically evaluated. There was ample evidence from which the jury could conclude that the plaintiff was a loyal, dedicated and productive employee.

There was substantial evidence from which the jury could find that the plaintiff was discharged in a callous and demeaning manner; that the method of investigation and termination was insulting and utterly disregarded plaintiff's rights and feelings; and that the plaintiff was discharged in pursuit of a company-wide plan to reduce the number of older employees in order to make room for promotions of younger employees. The evidence clearly showed that the defendant reaped large financial gains from employee cutbacks.

The question of whether the damages awarded are so excessive as to require a vacation of the verdict or remittitur re-

mains to be addressed. Plaintiff's actual damages are clearly supported by evidence in the record. Both economists testified that they were using conservative estimates. The jury was not bound to those estimates. It was within the jury's province to determine the plaintiff's probable retirement date, his predictable pay increases based on earnings history and the appropriate amount to discount to present value. Plaintiff's Exhibit 498 more than amply provides the basis for the jury's determinations.

It is not for me to say that a jury's assessment of unliquidated damages is wrong because I would have arrived at a different figure. Indeed, the constant exposure to death, injury and outrage which confronts judges necessarily jades our vision and immures our emotions. The genius of the jury system is the deliverance of judgment by collective response from members of the community who have ordinary experience.

In its argument the defendant compares the damages awarded by the jury for pain, suffering and humiliation to sums awarded in physical injury cases involving quadraplegia. The comparison is inapposite for a whole host of reasons, not the least of which is the presence in such cases of other sources of compensation and treatment.

The injuries suffered by the plaintiff in this case are more akin to those suffered in defamation cases. Indeed, the plaintiff's reputation in his community was destroyed by the acts of defendant. The plaintiff was totally disgraced to the extent that he contemplated suicide. Large awards in similar circumstances have been awarded.

This case was tried to a jury of six persons. One was a retired college professor, another was a registered professional pharmacist; others were college educated. The members of this jury sat together, consulted with one another and applied their separate experiences in the affairs of life to the facts adduced at trial. There is not even the breath of a suggestion that this jury based its verdict on anything other than the evidence offered at trial. From this trial these six jurors drew a unanimous

conclusion which it is the very function of the law to obtain. As Justice Hunt said so well in *Sioux City & P. Ry. Co. v. Stout*, 84 U.S. 657, 664, 17 Wall. 657, 21 L.Ed. 745 (1874), "It is assumed that twelve men know more of the common affairs of life than does one man: that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge."

In sum, I think it would be the worst sort of judicial activism to vacate this verdict merely because I might have reached a different result or because the lawyers made different evaluations. The punitive damage award is less than twice the actual damage award; well within the range of reasonableness surveyed by the Tenth Circuit in *Malandris v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 703 F.2d 1152 (1981).

I am simply not imperious enough to say that this jury did not know what it was doing or that passion, prejudice or corruption or other improper cause invaded the trial. On the basis of conflicting and sometimes unexplained evidence, this jury found in favor of an individual and against a vast corporate enterprise. Its award of exemplary damages bears a reasonable relationship to the actual damages which it found and yet is large enough to fulfill the purpose of exemplary damages as stated in the instructions of law delivered to it. Based on the evidence I heard, my judicial conscience is not shocked—though my acquired cynicism has received a rather sharp blow.

For these reasons, defendant's post-trial motions are denied. An amended judgment shall enter this day in the total sum of $19,096,495.01. A stay of execution on the judgment is granted until September 13, 1985. Bond on appeal is set at $24,000,000.